# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| CORNERSTONE CREDIT UNION LEAGUE and CONSUMER DATA INDUSTRY ASSOCIATION,<br><br>*Plaintiffs*,<br><br>v.<br><br>CONSUMER FINANCIAL PROTECTION BUREAU and ROHIT CHOPRA in his official capacity as Director of the CFPB,<br><br>*Defendants*. | **Civil Action No. 4:25-cv-00016-SDJ** |

**REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR A PRELIMINARY INJUNCTION**

In their preliminary injunction motion, Plaintiffs explained that the Final Rule has an obvious and fatal flaw: it purports to overwrite Congress's express authorization in FCRA for CRAs to include coded information about a consumer's medical debts in consumer reports and for creditors to consider such coded information in credit determinations. The CFPB's opposition brief does nothing to alter this conclusion. Unable to change the unambiguous words of the statute, the CFPB instead contends that FCRA does not provide CRAs and creditors these rights, and thus the Final Rule does not contradict the statute. But this interpretation is at war with FCRA's plain language, and in many respects is simply incoherent. Time is of the essence; the Final Rule has a March 17 compliance deadline. Because the Final Rule contradicts the plain text of FCRA, imposes unrecoverable compliance costs, and is not in the public interest, this Court should promptly enjoin it to preserve Plaintiffs' rights and interests until it issues a judgment on the merits.

**1. FCRA Expressly Permits CRAs to Report Coded Medical Debt Information.**

The CFPB begrudgingly acknowledges that FCRA allows CRAs to report coded medical debt information. 15 U.S.C. § 1681b(g)(1)(C). Yet it claims (Opp. 12) that the statute does not "affirmatively grant[] CRAs permission to share . . . anonymized information." But that is exactly what the statute does. While other medical information is mostly off limits, Congress specifically permitted CRAs to report coded medical debt information—it could not have been clearer.

Worse, the Bureau asserts (Opp. 12) that it may eliminate this statutory provision by "promulgating regulations." This upends administrative law. Agencies are "mere creatures of statute," and their authority is defined and limited by congressional enactments. *Clean Water Action v. EPA*, 936 F.3d 308, 313 n.10 (5th Cir. 2019). It is a "core administrative-law principle" that "an agency may not rewrite clear statutory terms to suit its own sense of how the statute should operate." *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 328 (2014). Although the CFPB may make

rules implementing FCRA, *see* 15 U.S.C. § 1681s(e)(1), it cannot enact a regulation that is "manifestly contrary" to FCRA. *Texas v. United States*, 2025 WL 227244, at *15 (5th Cir. Jan. 17, 2025) (cleaned up). Here, the CFPB cannot prohibit what § 1681b(g)(1)(C) explicitly permits.[1]

Desperate for some statutory toehold, the CFPB keys in on FCRA's "permissible purpose provision," which it claims (Opp. 11–12) supersedes § 1681b(g)(1)(C). Not so. FCRA's permissible purpose requirement serves a narrow but important function—CRAs may not furnish a consumer report unless the recipient has a statutorily defined "permissible purpose." 15 U.S.C. § 1681b(a). For example, a CRA may furnish a consumer report if it has "reason to believe" the recipient "intends to use the information" for a "credit transaction." 15 U.S.C. § 1681b(a)(3)(A). The Bureau's theory is that if the Final Rule prohibits a creditor from considering medical debt information, then a CRA cannot reasonably believe the creditor will use a report containing medical debt information for a credit decision. But that is not true as a practical matter. Even if a creditor may not consider individual medical debt tradelines on a consumer report, it may still permissibly use the consumer report for a credit decision—the Bureau admits as much.[2]

The CFPB's position here would transform the scope of § 1681b(a). Under the Final Rule, even if a creditor certifies a permissible purpose for the consumer report as a whole, CRAs could not furnish a report if a creditor cannot consider individual line items on it. It is difficult to overstate the breadth of the CFPB's newfound font of regulatory authority. With one breath it assures CRAs that they will not need to police creditors (Opp. 14), yet in the very next breath, it

---

[1] Although the CFPB claims (Opp. 10–11) its prohibition on CRAs is necessary under § 1681s(e)(1) to "prevent evasions" of the bar on creditors' considering medical debt, FCRA does not prohibit creditors from considering coded medical debt information, *see infra* pp. 3–4.

[2] "[I]f a creditor receives, on a consumer report, unsolicited medical debt information, the creditor would not have obtained medical information in violation of the prohibition as provided by the statutory rule of construction in . . . § 1022.30(c)(1)." Final Rule, 90 Fed. Reg. at 3305.

2

asserts (*id.*) that CRAs are "require[d] . . . to consider whether the creditor is prohibited from using *the information* contained in the consumer report." There is nothing special about medical debt; the logic of the CFPB's position would extend to any other creditor-side defect. If a creditor lacks licensure, for example, it would be prohibited by law from using the information in a consumer report to extend credit. By the CFPB's logic, FCRA would prohibit CRAs from furnishing reports in that situation as well. That contradicts both the statute and caselaw. *See* Mot. at 14 & n.2.

**2. FCRA Authorizes Creditors to Consider Coded Medical Debt Information.**

The Final Rule also contradicts § 1681b(g)(2). Paragraphs (g)(1) and (g)(2) work in concert: where (g)(1)(C) bans CRAs from reporting medical information to creditors except for coded medical debt, (g)(2) prohibits creditors from obtaining or using medical debt information "other than" coded medical debt information. The CFPB (Opp. 7) claims that the prohibition in (g)(2) is "qualified only by regulatory exceptions that the Bureau may promulgate." True, (g)(2) also authorizes the CFPB to make "regulations" authorizing creditors to use additional types of medical information, but to claim that is the "only" exception to (g)(2)'s prohibition ignores the statutory text that expressly permits the consideration of coded medical debt.

The CFPB's rationale rests on fiction. The CFPB claims (Opp. 8 & n.3) that the "other than" clause in (g)(2) actually modifies the *Bureau's* authority. That is, the CFPB may permit the use of medical information "other than" coded medical information, but creditors may never obtain or use coded medical information. This is not a plausible reading of the statute. "[A] limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows." *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003). Here, the "other than" parenthetical modifies the phrase "a creditor shall not obtain or use medical information." That is, a creditor generally may not use non-coded medical information, but it *may* use coded medical

3

debt information. The Bureau's reading also makes no sense. Why would Congress, in a statute about consumer privacy, let the CFPB greenlight the use of *non-coded* medical information but prohibit the Bureau from authorizing creditors to use *coded* information, which is the only type of medical debt information that can appear on consumer reports?

The CFPB makes much of the fact that the "other than" parenthetical was added as a technical amendment. But that is unremarkable, as the clause works no "radical" change (*contra* Opp. 9). Section 1681b(g)(2) still prohibits creditors from using most kinds of identifying medical information in credit determinations; the parenthetical merely aligns (g)(2) and (g)(1) and allows creditors to make use of the coded medical debt information that CRAs are allowed to furnish.

### 3. The CFPB Rewrites FCRA's "Permissible Purposes" Provision.

In addition to flouting § 1681b(g)(1) and (2), the CFPB lacks authority to limit CRAs' reporting based on laws applicable to creditors. The Bureau now acknowledges (Opp. 14) that if a state law is preempted, it imposes no limit on CRAs, even under the Final Rule. But the prohibition on CRAs still has no statutory basis. The only asserted authority for this portion of the Final Rule is FCRA's "permissible purposes" provision which, as explained above, does not limit CRAs based on whether a creditor may consider individual line items in a consumer report—it allows CRAs to furnish reports to any recipient who the CRA has reason to believe intends to use the report for a permissible purpose, such as a credit determination. Nothing in FCRA permits the CFPB to create, out of whole cloth, new categories of information that CRAs may not report.

### 4. The Final Rule Imposes Immediate and Unrecoverable Compliance Costs.

Plaintiffs demonstrated through seven sworn declarations that the Final Rule requires them to initiate immediate, expensive, and, in some cases, irreversible changes to technology, information, and procedures. The CFPB does not dispute the unrecoverability of these costs, it

only questions (Opp. 17) their imminence.[3] But it cannot do so convincingly when the Final Rule becomes effective on March 17, just 35 days after the upcoming February 10 hearing on Plaintiffs' preliminary injunction motion. Absent an injunction, compliance costs will continue to accrue.

The CFPB also speculates (Opp. 18) that costs on CRAs will be minimal because the nationwide CRAs have already eliminated much medical debt from consumer reports. But the declarations explain why the Final Rule poses an additional compliance burden: even if systems are currently calibrated to exclude small, paid, and recently incurred medical debts, additional infrastructure is needed to identify and suppress other medical debt information currently included in reports, and to block inclusion of new medical debt information. *See, e.g.*, Ex. 3 ¶ 7. Alternatively, the CFPB claims (Opp. 17) that it would be a *de minimis* burden for CRAs to erase all medical debt from their files. But each nationwide CRA explained this would cause substantial and irreparable harm by putting each CRA at a permanent market disadvantage and making it impossible to restore data if the Rule were vacated. Ex. 4 ¶ 6.b.i.1; Ex. 5 ¶ 5.b.iv; Ex. 6 ¶ 5.c–d.[4]

**PRAYER FOR RELIEF**

Plaintiffs therefore request that this Court enjoin the Final Rule for the duration of this suit and extend the Final Rule's compliance deadline day by day for the length of the injunction.

---

[3] The CFPB asks the Court to disregard the anonymous declarations. But courts in this Circuit regularly rely on anonymous declarations to support a preliminary injunction. *See, e.g.*, *Tex. Bankers Ass'n v. Off. of the Comptroller*, 728 F. Supp. 3d 412, 419 (N.D. Tex. 2024) (collecting Fifth Circuit authorities permitting the use of anonymous declarations). Plaintiffs' counsel will provide unanonymized, signed versions of the declarations *in camera* upon request.

[4] Finally, the balance of the equities favors a preliminary injunction for the simple reason that there is "no public interest in the perpetuation of unlawful agency action." *Texas v. Biden*, 10 F.4th 538, 560 (5th Cir. 2021) (per curiam) (cleaned up).

5

Dated:  January 27, 2025

Ryan T. Scarborough (admitted *pro hac vice*)
DC Bar. No. 466956
Jesse T. Smallwood (admitted *pro hac vice*)
DC Bar No. 495961
William R. Murray, Jr. (admitted *pro hac vice*)
DC Bar. No. 384797
Christopher J. Baldacci (admitted *pro hac vice*)
DC Bar. No. 90007281
WILLIAMS & CONNOLLY LLP
680 Maine Ave., SW
Washington, DC 20024
Tel: (202) 434-5000
rscarborough@wc.com
jsmallwood@wc.com
bmurray@wc.com
cbaldacci@wc.com

Respectfully Submitted,

By: /s/ *Alex More*
Alex More
TX Bar No. 24065789
Andrea C. Reed
TX Bar No. 24121791
CARRINGTON, COLEMAN, SLOMAN &
BLUMENTHAL, L.L.P.
901 Main Street
Suite 5500
Dallas, TX 75202
Tel: (214) 855-3053
amore@ccsb.com

Eric Blankenstein (admitted *pro hac vice*)
DC Bar No. 997865
LAW OFFICES OF ERIC BLANKENSTEIN PLLC
1701 Pennsylvania Ave., NW, #200
Washington, DC 20006
eric@blankensteinlegal.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of this Reply was filed electronically through the Court's ECF system.

      */s/ Alex More*