**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| CORNERSTONE CREDIT UNION LEAGUE AND CONSUMER DATA INDUSTRY ASSOCIATION,<br><br>                  Plaintiffs,<br><br>v.<br><br>CONSUMER FINANCIAL PROTECTION BUREAU and the Acting Director of the Consumer Financial Protection Bureau,<br><br>                  Defendants. | No. 4:25-cv-00016-SDJ |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE OF PROPOSED DEFENDANT-INTERVENORS NEW MEXICO CENTER ON LAW AND POVERTY, TZEDEK DC, DAVID DEEDS, AND HARVEY COLEMAN**

i

**TABLE OF CONTENTS**

**Page**

Table of Authorities ................................................................................................... iii

Introduction ................................................................................................................ 1

Argument .................................................................................................................... 4

    I.  Proposed Intervenors Have a Right to Intervene ............................................... 4

        A.    This intervention motion is timely. ........................................................ 4

        B.    Proposed Intervenors have legally protectable interests in the Rule. ......... 6

        C.    Proposed Intervenors' interests will be impaired if Plaintiffs succeed..... 11

        D.    The CFPB will not adequately represent Intervenors' interests. .............. 13

    II. Alternatively, Proposed Intervenors Should Be Granted Permission to Intervene. ..... 15

Conclusion ................................................................................................................ 15

# TABLE OF AUTHORITIES

## Cases

*Brumfield v. Dodd*, 749 F.3d 339 (5th Cir. 2014) ................................................................. passim

*Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267 (2022) ....................................... 5

*Ceres Gulf v. Cooper*, 957 F.2d 1199 (5th Cir. 1992) ................................................................ 7

*City of Houston v. Am. Traffic Sols., Inc.*, 668 F.3d 291 (5th Cir. 2012) ...................................... 7

*Clean Water Action v. EPA*, 936 F.3d 308 (5th Cir. 2019) ........................................................ 12

*Cook Cnty. v. Mayorkas*, 340 F.R.D. 35 (N.D. Ill. 2021) ............................................................. 6

*Cook Cnty. v. Texas*, 37 F.4th 1335 (7th Cir. 2022) ...................................................................... 5

*Edwards v. City of Houston*, 78 F.3d 983 (5th Cir. 1996) ..................................................... 6, 7, 13

*Entergy Gulf States Louisiana, L.L.C. v. U.S. E.P.A.*, 817 F.3d 198 (5th Cir. 2016) ............. 13, 14

*Heaton v. Monogram Credit Card Bank of Ga.*, 297 F.3d 416 (5th Cir. 2002) .......................... 13

*In re Estelle*, 516 F.2d 480 (5th Cir. 1975) ................................................................................. 15

*John Doe #1 v. Glickman*, 256 F.3d 371 (5th Cir. 2001) .................................................. 4, 5, 6, 13

*La Union del Pueblo Entero v. Abbott*, 29 F.4th 299 (5th Cir. 2022) .................................. 4, 7, 11

*McDonald v. E.J. Lavino Co.*, 430 F.2d 1065 (5th Cir. 1970) ....................................................... 6

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452 (5th Cir. 1984) ............ 7

*NextEra Energy Cap. Holdings, Inc. v. D'Andrea*, No. 20-50168, 2022 WL 17492273 (5th Cir. Dec. 7, 2022) .................................................................................................... 4, 7, 8, 11

*Nat'l Treasury Employees Union v. Vought*, 1:25-cv-00381-ABJ (D.D.C. Feb. 14, 2025) ......... 14

*Ross v. Marshall*, 426 F.3d 745 (5th Cir. 2005) ........................................................................... 5

*Rotstain v. Mendez*, 986 F.3d 931 (5th Cir. 2021) ........................................................................ 6

*Sierra Club v. Espy*, 18 F.3d 1202 (5th Cir. 1994) ............................................................. 5, 6, 13

*Texas v. United States*, 805 F.3d 653 (5th Cir. 2015) ........................................................... passim

*Trans Chem. Ltd. v. China Nat'l Mach. Imp. & Exp. Corp.*, 332 F.3d 815 (5th Cir. 2003)......... 15

*Trbovich v. United Mine Workers of Am.*, 404 U.S. 528 (1972) ................................................. 13

*United Airlines, Inc. v. McDonald*, 432 U.S. 385 (1977) .............................................................. 5

*Wal-Mart Stores v. Tex. Alchoholic Beverage Comm'n*, 834 F.3d 562 (5th Cir. 2016)................ 7

**Statutes**

5 U.S.C. § 553 ............................................................................................................................... 12

**Regulations**

Prohibition on Creditors and Consumer Reporting Agencies Concerning Medical Information
(Regulation V) ("Medical Debt Rule" or "Rule"), 90 Fed. Reg. 3,276 (Jan. 14, 2025) (to be
codified at 12 C.F.R. pt. 1022)................................................................................................... 1

**Rules**

Federal Rule of Civil Procedure 24 ...................................................................................... passim

**Other Authorities**

CFPB, *CFPB Finalizes Rule to Remove Medical Bills from Credit Reports* (Jan. 7, 2025),
https://www.consumerfinance.gov/about-us/newsroom/cfpb-finalizes-rule-to-remove-medical-
bills-from-credit-reports/.......................................................................................................... 1

CFPB, *Consumer credit reports: A study of medical and non-medical collections* (Dec. 2014),
https://files.consumerfinance.gov/f/201412_cfpb_reports_consumer-credit-medical-and-non-
medical-collections.pdf............................................................................................................ 1

Email from Acting Director Vought, obtained from Philip Melanchthlon Wegmann
(@PhilipWegmann), X,
https://x.com/philipwegmann/status/1888409309937070128?s=46&t=I41S_6HTDCUVmJ5H
UDfHw................................................................................................................................... 14

Kate Berry, *President Trump confirms his goal is to eliminate the CFPB*, Am. Banker, Feb. 11,
2025, https://www.americanbanker.com/news/president-trump-confirms-his-goal-is-to-
eliminate-the-cfpb ............................................................................................................. 2, 14

Laura Wamsley, *New CFPB chief closes headquarters, tells all staff they must not do 'any work
tasks,'* NPR, Feb. 10, 2025, https://www.npr.org/2025/02/08/nx-s1-5290914/russell-vought-
cfpb-doge-access-musk.......................................................................................................... 14

Stacy Cowley, Consumer bureau backs off legal fights as Treasury officials take charge, N.Y.
Times, Feb. 6, 2025, https://www.nytimes.com/live/2025/02/06/us/president-trump-
news?searchResultPosition=1#consumer-bureau-backs-off-legal-fights-as-treasury-officials-
take-charge .............................................................................................................................. 2

## TABLE OF EXHIBITS

**Exhibit 1**    CFPB, *CFPB Finalizes Rule to Remove Medical Bills from Credit Reports* (Jan. 7, 2025)

**Exhibit 2**    CFPB, *Consumer credit reports: A study of medical and non-medical collections* (Dec. 2024)

**Exhibit 3**    Declaration of Harvey Coleman

**Exhibit 4**    Declaration of David Deeds

**Exhibit 5**    Declaration of Ariel Levinson-Waldman

**Exhibit 6**    Declaration of Sireesha Manne

**Exhibit 7**    Email from Acting Director Vought to CFPB staff

**Exhibit 8**    Order, *Nat'l Treasury Employees Union v. Vought*, 1:25-cv-00381-ABJ (D.D.C. Feb. 14, 2025)

## INTRODUCTION

The Consumer Financial Protection Bureau ("CFPB" or "Bureau"), pursuant to statutory authority granted to it by Congress, promulgated a rule to remove medical debt from consumer credit reports. That rule, titled Prohibition on Creditors and Consumer Reporting Agencies Concerning Medical Information (Regulation V) ("Medical Debt Rule" or "Rule"), 90 Fed. Reg. 3,276 (Jan. 14, 2025) (to be codified at 12 C.F.R. pt. 1022), removes an estimated $49 billion in medical debt from the credit reports of around 15 million Americans and will provide them easier access to credit, housing, and employment.[1] *See CFPB Finalizes Rule to Remove Medical Bills from Credit Reports*, CFPB Website (Jan. 7, 2025), https://www.consumerfinance.gov/about-us/newsroom/cfpb-finalizes-rule-to-remove-medical-bills-from-credit-reports/, attached as Ex. 1. The Rule provides meaningful, tangible benefits to Americans who have incurred medical debt and the organizations that serve them.

Research shows that inclusion of medical debt on a credit report "provide[s] little predictive value to lenders about borrowers' ability to repay other debts" and that many of these purported debts are not actually owed or should have been paid by insurance—such as in the case of Proposed Intervenor Harvey Coleman, whose medical debt was incurred when his son was covered by Medicaid. *CFPB Finalizes Rule to Remove Medical Bills from Credit Reports*, *supra*, attached as Ex. 1; CFPB, *Consumer credit reports: A study of medical and non-medical collections* (Dec. 2024), https://files.consumerfinance.gov/f/201412_cfpb_reports_consumer-credit-medical-and-non-medical-collections.pdf, attached as Ex. 2; Coleman Dec. ¶¶ 6-7, attached as Ex. 3.

---

[1] Although the Rule only applies to lenders making credit decisions, it will also prevent medical debt from factoring into credit scores.  Credit scores affect access housing and employment. For example, landlords may use a credit score to determine how much to charge for a security deposit and credit scores can impact whether a consumer can obtain a loan to buy a car to get to work.

Nonetheless, Consumer Data Industry Association ("CDIA") and Cornerstone Credit Union League ("Cornerstone") (collectively "Plaintiffs"), trade associations of credit reporting agencies and credit unions, respectively, oppose the rule, claiming that the inclusion of medical debt is an essential credit reporting and determination process. The day the final Rule was announced, Plaintiffs sued the Bureau to enjoin the Rule. Compl., ECF No. 1.

Prior to this month, the Bureau vigorously defended the Rule, including by opposing Plaintiffs' motion for preliminary injunction in this case, ECF No. 16. But the Bureau has recently reversed course. On February 3 and 4, the CFPB Acting Director ordered all work halted, including that all effective dates of all Rules be suspended and that no filings be made in any litigation, other than to seek a pause. On February 5, the CFPB not only requested a stay of this litigation, it also reversed its position in briefing and requested that the Court grant a delay of the effective date of the Medical Debt Rule. ECF 23; *see also* Stacy Cowley, *Consumer bureau backs off legal fights as Treasury officials take charge*, N.Y. Times, Feb. 6, 2025, https://www.nytimes.com/live/2025/02/06/us/president-trump-news?searchResultPosition =1#consumer-bureau-backs-off-legal-fights-as-treasury-officials-take-charge (noting that the Bureau "reversed course this week and dropped its opposition" to an injunction delaying the Rule). The administration's subsequent actions, including refusing funding for the CFPB, engaging in mass layoffs, and President Trump's confirmation that he plans to eliminate the CFPB altogether demonstrate that the CFPB will not seek to defend the Rule at the end of the litigation stay. *See, e.g.*, Kate Berry, *President Trump confirms his goal is to eliminate the CFPB*, Am. Banker, Feb. 11, 2025, https://www.americanbanker.com/news/president-trump-confirms-his-goal-is-to-eliminate-the-cfpb.

Proposed Intervenors New Mexico Center on Law and Poverty (NMCLP), Tzedek DC,

Harvey Coleman, and David Deeds seek to step in to defend the Rule to protect their own interests, since it seems clear that the Bureau will not adequately do so. Proposed Intervenors NMCLP and Tzedek DC are non-profit organizations that work to advance economic security and who, through their direct services and systemic advocacy, support Americans who suffer from the impacts of medical debt on their credit reports. Proposed Intervenors David Deeds—a Texas truck driver suffering from medical debt related to cancer treatment—and Harvey Coleman—a resident of our nation's capital whose credit report includes debt incurred from his child's medical treatment—are individuals who will benefit from the implementation of the Rule. Each Proposed Intervenor moves to intervene to defend the Rule under Federal Rule of Civil Procedure 24(a)(2). Proposed Intervenors have acted promptly following the changes in administration and Bureau leadership, making their motion timely. They seek to intervene to protect their legally cognizable interest in the matter that may be impaired by the disposition of this case. NMCLP and Tzedek DC each have a direct interest in preserving the Rule, which benefits their clients and constituencies, so that they can direct their limited resources to help their constituents and clients on matters other than addressing the impacts of medical debt on their credit reports; on the other hand, if the Rule is vacated or stayed, NMCLP and Tzedek DC will be required to devote their resources to addressing these impacts and will not be able to focus as much on their other efforts. Mr. Coleman and Mr. Deeds each have a direct interest in the Rule going into effect as planned, as it will eliminate medical debt from each of their credit reports that is currently negatively impacting their credit profiles and, as a result, their access to credit, housing, and employment, among other opportunities.

Alternatively, Proposed Intervenors seek permissive intervention under Federal Rule of Civil Procedure 24(b)(1)(B). Proposed Intervenors' motion is timely; and their defense shares

issues of fact and law with that of Defendants Consumer Financial Protection Bureau and the current Acting Director ("Agency Defendants").

## ARGUMENT

### I.    Proposed Intervenors Have a Right to Intervene.

Proposed Intervenors are entitled to intervene as of right under Rule 24(a)(2) where (1) their motion to intervene is timely, (2) they assert an interest in the controversy, (3) the disposition of the case may impair or impede their  ability to protect that interest, and (4) that interest is not adequately represented by the existing parties. *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 305 (5th Cir. 2022) (citing *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015)). "Rule 24 is to be liberally construed." *Id.* (citing *Brumfield v. Dodd*, 749 F. 3d 339, 341 (5th Cir. 2014)). Courts "allow intervention where no one would be hurt and the greater justice could be attained." *John Doe #1 v. Glickman*, 256 F.3d 371, 375 (5th Cir. 2001) (internal citation omitted); *see also La Union*, 29 F.4th 305 (noting "our policy favoring intervention" and the intervenor's "minimal burden" (internal marks and citation omitted)). Proposed Intervenors here easily meet each of the conditions for intervention as of right.

### A.    This intervention motion is timely.

Proposed Intervenors' motion is timely. Rule 24(a)(2)'s timeliness requirement considers: (1) how long the potential intervenor knew or reasonably should have known of her stake in the case; (2) the prejudice, if any, the existing parties may suffer because the potential intervenor failed to intervene when she knew or reasonably should have known of her stake in that case; (3) the prejudice, if any, the potential intervenor may suffer if the court does not let her intervene; and (4) any unusual circumstances. *Glickman*, 256 F.3d at 376. The "timeliness clock" begins to run when a proposed intervenor knew or should have known of its stake in the subject case or when it knew that its stake would not be protected by the matter's existing parties, *not* when it first learned of

the existence of the subject action. *Id.* at 376-78. Proposed Intervenors demonstrate timeliness under these considerations.

Proposed Intervenors "sought to intervene 'as soon as it became clear' that [their] interests 'would no longer be protected' by the parties in the case." *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 279 (2022) (quoting *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394 (1977)) (allowing intervention even after appellate decision was rendered, shortly after learning that the state official would cease defending the rule and within the timeframe to seek *en banc* review). Timeliness analyses are "'contextual,' and should not be used as a 'tool of retribution to punish the tardy would-be intervenor, but rather [should serve as] a guard against prejudicing the original parties by the failure to apply sooner.'" *Ross v. Marshall*, 426 F.3d 745, 754 (5th Cir. 2005) (quoting *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994)).

Proposed Intervenors have acted promptly to respond to the change in the Bureau's position on the outcome of the Rule and the impact of those developments on Proposed Intervenors' interests in this action. Within the past two weeks, the administration has made its hostility to the work of the CFPB and the Rule clear. Even after President Trump's inauguration, the CFPB remained under the same leadership that issued the Rule. Indeed, the CFPB continued to vigorously defend the Rule in this case until February 5, at which point it abruptly changed course and agreed to a delay in the Rule's effective date. ECF No. 23. Proposed Intervenors thus reasonably relied on the government's "continued defense of the [Rule]." *Cook Cnty. v. Texas*, 37 F.4th 1335, 1341-42 (7th Cir. 2022), *cert. denied sub nom.* 143 S. Ct. 565 (2023). While the stated purpose of that action was to provide the Bureau time to review its next steps, subsequent activities, including Acting Director Vought's refusal of annual funding, mass layoffs, and expansion of the stop work order, make it clear that Proposed Intervenors can no longer "count on [the government]

to defend the challenged regulation . . . [and] must be allowed to intervene to ensure the regulation's continued defense." *Cook Cnty. v. Mayorkas*, 340 F.R.D. 35, 45 (N.D. Ill. 2021). Proposed Intervenors thus filed timely, less than three weeks after the Bureau agreed to delay the rule's effective date. *See Rotstain v. Mendez*, 986 F.3d 931, 938 (5th Cir. 2021) (citing cases finding intervention timely after three weeks, one month, thirty-seven days, and forty-seven days past the accrual of their interest); *Edwards v. City of Houston*, 78 F.3d 983, 1000-01 (5th Cir. 1996) (citing case finding five month lapse reasonable; noting that most cases finding interventions untimely concern motions filed after final judgment is entered).

Moreover, intervention will not prejudice the Court or the parties, the "most important consideration" in evaluating timeliness. *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1073 (5th Cir. 1970); *see also Glickman*, 256 F.3d at 378. "[P]rejudice must be measured by the delay in seeking intervention, not the inconvenience to the existing parties of allowing the intervenor to participate in the litigation." *Sierra Club v. Espy*, 18 F.3d 1202, 1206 (5th Cir. 1994). This matter is currently stayed, and Proposed Intervenors do not seek to modify any deadlines; instead, they stand ready to defend the Rule and abide by all Court deadlines that would otherwise be imposed on the government, including appearing at the scheduled hearing on the motion for preliminary injunction to argue in support of the Rule. As a result, no delay or prejudice to the parties or the Court will result.

### B.    Proposed Intervenors have legally protectable interests in the Rule.

Proposed Intervenors David Deeds and Harvey Coleman are individuals who are currently suffering the impacts of medical debt appearing on their credit reports. The outcome of this litigation will impact their credit profiles and, as a result, their ability to access housing and employment, their insurance rates, their credit limits, access to other forms of credit, and numerous other areas of their lives. Proposed Intervenors Tzedek DC and New Mexico Center on Law and

6

Poverty serve and advocate for Americans who are impacted by medical debt, and the outcome of this litigation will impact where they are able to direct their limited resources to further their core missions. If the government fails to defend the Rule, Proposed Intervenors must.

To successfully intervene, an intervenor must have a "direct, substantial, legally protectable interest" in a case. *Edwards v. City of Houston*, 78 F.3d 983, 1004 (5th Cir. 1996) (en banc) (citation omitted). This is not a demanding standard: "an interest is sufficient if it is of the type that the law deems worthy of protection, even if the intervenor does not have an enforceable legal entitlement or would not have standing to pursue her own claim." *Texas*, 805 F.3d at 659. Rule 24(a) recognizes a broad range of interests. *See, e.g.*, *City of Houston v. Am. Traffic Sols., Inc.*, 668 F.3d 291, 294 (5th Cir. 2012) (allowing intervention based on longstanding advocacy against mayor). "The interest requirement may be judged by a more lenient standard if the case involves a public interest question or is brought by a public interest group." *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014) (citation omitted). "Rule 24(a)(2) does not require 'that a person must possess a pecuniary or property interest to satisfy the requirement of Rule 24(a)(2).'" *La Union*, 29 F.4th at 305 (citation omitted); *see also Texas*, 805 F.3d at 658. Prospective interference with access to opportunities can constitute a legally protected interest, and "the 'intended beneficiary of a government regulatory system' has a legally protected interest in a case challenging that system." *NextEra Energy Cap. Holdings, Inc. v. D'Andrea*, No. 20-50168, 2022 WL 17492273, at *3 (5th Cir. Dec. 7, 2022) (quoting *Wal-Mart Stores v. Tex. Alchoholic Beverage Comm'n*, 834 F.3d 562, 567-69 (5th Cir. 2016); citing cases). In short, "[t]he 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Ceres Gulf v. Cooper*, 957 F.2d 1199, 1203 n.10 (5th Cir. 1992) (citation omitted).

Here, Mr. Coleman and Mr. Deeds are clearly intended direct beneficiaries of the Rule. *See NextEra Energy*, 2022 WL 17492273, at *3; *see also* Ex. 1 (stating that the goal of the Rule is to "protect consumers" like Mr. Coleman and Mr. Deeds "from harms from medical debt"). The Rule further directly impacts Mr. Coleman's and Mr. Deeds' access to credit opportunities, such that their interests are directly impacted. *See NextEra Energy*, 2022 WL 17492273, at *3 (citing cases).

David Deeds is a 62-year-old Texas resident and truck driver. Deeds Dec. ¶¶ 1, 3, attached as Ex. 4. Mr. Deeds voted for President Trump in the past three presidential elections, but he supports the Rule and believes that medical debt should not be included in credit scores, in part because of his own experience. *Id.* ¶ 17. Over more than a decade, Mr. Deeds worked hard to improve his credit after a period of homelessness. *Id.* ¶ 9. Mr. Deeds' credit profile is extremely important to him because of its necessity in obtaining housing, transportation, and employment, and to make him feel secure that he will never be homeless again. *Id.* ¶¶ 9, 15. As of 2023, Mr. Deeds had a good credit score and was current on his bills, but in 2024, he was diagnosed with pancreatic cancer. *Id.* ¶¶ 4-8. As the result of his cancer treatment and related surgeries, Mr. Deeds incurred substantial medical debt. *Id.* ¶¶ 4-7, 10-12. Despite attempting to pay these debts, he recently received a $60,000 bill for his cancer surgery. *Id.* ¶ 11. While this debt is not yet reflected on his credit report, he is very concerned that it will be soon if the Rule does not go into effect. *Id.* ¶¶ 11, 13. Another medical debt from Mr. Deeds' treatment does appear on his credit report, and he believes it has contributed to his lower credit score and, as a result, his denial of credit to make necessary home repairs. *Id.* ¶¶ 14-15. All of this has emotionally impacted Mr. Deeds. *Id.* ¶¶ 15-16. Implementation of the Rule will directly help Mr. Deeds by improving his credit profile and making it easier for him to obtain credit, maintain his home, and provide him with security and peace of mind. *Id.* ¶ 16.

Harvey Coleman's credit report includes a medical debt of about $1,300 from a medical emergency faced by his young son, even though his son was covered by Medicaid at the time. Coleman Dec. ¶¶ 6-8, attached as Ex. 3. Mr. Coleman was denied financing for a cell phone—a critical item to participate in today's economy—as a result, in part, of this debt appearing on his credit report. *Id.* ¶ 9. Mr. Coleman is participating in a financial counseling program to improve his credit; if the Rule goes into effect, it will help with these efforts by removing the derogatory medical debt from Mr. Coleman's credit report and enabling Mr. Coleman to more easily access housing, credit, and employment. *Id.* ¶¶ 10-11.

Tzedek DC and NMCLP also each have an interest in the Rule, because it will make their pursuit of their respective missions and core work easier and allow them to conserve resources for other aims. Tzedek DC and NMLCP, as public interest groups subject to a more lenient standard for intervention, *see Brumfield*, 749 F.3d at 344, have a concrete "stake in the matter" supporting intervention, *Texas*, 805 F.3d at 657.

Tzedek DC is a non-profit organization with a mission of safeguarding the legal rights and financial health of DC residents who face the consequences of debt collection and credit-related obstacles, including those arising from medical debt. Levinson-Waldman Dec. ¶ 3, attached as Ex. 5. Because of Tzedek DC's limited resources, it must regularly make difficult decisions about how to direct those resources to advance its mission. *Id.* ¶ 5. Tzedek DC has a Medical Debt Project that provides legal and financial counseling on medical debt collection issues, including credit reporting. *Id.* ¶¶ 7-9. Tzedek DC focuses substantial resources on this work; its 2025 budget reflects its expectation that the Rule would go into effect and decrease the need for its services to address medical debt credit reporting. *Id.* ¶¶ 9-10. If the Rule does not go into effect, Tzedek DC will likely exceed its planned spending for the project. *Id.* ¶ 10. Tzedek DC provides legal services,

including helping clients dispute credit reporting of medical debt and representing clients who are pressured to pay alleged medical debt to avoid the impacts on their credit. *Id.* ¶¶ 11-12. Tzedek DC further provides financial counseling to clients who are impacted by medical debt credit reporting, including advising them about addressing medical debt on their credit reports to improve their credit and on how to budget when they cannot access credit as the result of their credit scores. *Id.* ¶¶ 13-15. The need for Tzedek DC's legal and financial counseling services focused on medical debt tradelines would be eliminated by the Rule, which is reflected in its budget. *Id.* ¶¶ 10-15. In addition, Tzedek DC engages in community education; if the Rule does not go into effect, Tzedek DC will have to remove other items from its curriculum and print different material to ensure that it continues to cover medical debt credit reporting. *Id.* ¶¶ 16-17. In short, if the Rule is upheld, Tzedek DC will be able to redirect resources from medical debt tradeline-related work to other work that advances its mission. *Id.* ¶¶ 10, 18.

The New Mexico Center on Law and Poverty (NMCLP) is a non-profit organization with a mission of advancing economic and social justice, including by ensuring that every New Mexican has access to quality, affordable healthcare and remains free of medical debt and the impacts of medical debt collection. Manne Dec. ¶¶ 5, 7, attached as Ex. 6. Because of NMCLP's limited resources, it must regularly make difficult decisions about how to direct those resources to advance its mission. *Id.* ¶ 6. When one issue is resolved through legal or regulatory change, NMCLP can shift its resources to other priority areas that it has previously not been able to address. *Id.* NMCLP advocated for the recent passage of a state law that imposes requirements on medical debt collection, but the effectiveness of that statute is undermined by medical debt credit reporting. *Id.* ¶¶ 7-9. As a result, NMCLP has had to devote resources to combat the impacts of medical debt credit reporting, including by paying staff to conduct community outreach and education on the

10

impacts of medical debt credit reporting. *Id.* ¶ 10. If the Rule becomes effective as intended, NMCLP will be able to devote these resources to other activities, but if the Rule is vacated, NMCLP will be required to continue to expend these resources in this manner. *Id.* In addition, NMCLP represents New Mexicans in litigation challenging the harms stemming from medical debt credit reporting; expenditure of resources on litigation around this issue will no longer be necessary if the Rule goes into effect. *Id.* ¶ 11. NMCLP will also be devoting resources to advocating for passage of a state law to remove medical debt from credit reporting and other advocacy on this issue if the Rule is not implemented. *Id.* ¶ 12. The impact of the Rule would be felt as well in NMCLP's housing and health care access work. *Id.* ¶¶ 13-14. Overall, the Medical Debt Rule materially benefits NMCLP's mission and work, and if the Rule does not go into effect, NMCLP will have to reallocate its limited resources accordingly.

Proposed Intervenors, consumers who have applied for credit and organizations representing the interests of consumers, thus have sufficient interests in this matter to clearly meet the standard for Rule 24(a)(2). *Texas*, 805 F.3d at 659 (noting that interest required of intervenor defendant is less than that required for plaintiff's standing).

### C. Proposed Intervenors' interests will be impaired if Plaintiffs succeed.

Proposed Intervenors' interests will be impaired if they are not permitted to intervene in this litigation. As the Fifth Circuit has explained:

> The impairment requirement does not demand that the movant be bound by a possible future judgment . . . . Though the impairment must be practical and not merely theoretical, the parties seeking to intervene need only show that if they cannot intervene, there is a possibility that their interest *could* be impaired or impeded.

*NextEra Energy*, 2022 WL 17492273, at *4 (quoting *Brumfield*, 749 F.3d at 344; *La Union*, 29 F.4th at 307) (internal marks omitted and emphasis added). As detailed above, Proposed Intervenors have a significant interest in having the Medical Debt Rule take effect, the very

outcome Plaintiffs seek to prevent. A robust defense of the Rule is necessary to protect this interest. Without intervention, there is a meaningful risk that the government will not adequately defend the Rule in this litigation, which in turn increases the likelihood of an adverse outcome. Proposed Intervenors' interests have already been negatively impacted by the agreed stay of the effective date of the Rule through this litigation; any further agreement to delay the implementation of the Rule or acquiescence to an adverse ruling would significantly further impair their interests.

The outcome of this litigation will ultimately determine whether the Rule is vacated or permitted to stand and, in the interim, whether its effective date is further delayed. As described above and in the attached declarations, Proposed Intervenors' interests are directly linked to the Rule. If the Rule is vacated or its effective date further delayed as Plaintiffs wish, Proposed Intervenors will not have the opportunity to benefit from the Rule and accordingly will lose access to opportunities and will have to direct their resources to continue to address the problem of medical debt credit reporting. That the government may at some future point undertake a new rulemaking does not change this calculus. The only requirement of this factor is that Intervenors' interests *could* (not must) be impaired. In addition, if the Bureau decides to revisit its own lawfully promulgated and well-supported rule, including changing compliance dates, it must follow Administrative Procedures Act requirements for issuing a new or revised regulation. *See* 5 U.S.C. § 553; *see also, e.g.*, *Clean Water Action v. EPA*, 936 F.3d 308, 314 (5th Cir. 2019). If the CFPB attempts to circumvent these APA requirements by substantially delaying or evading implementation of the Final Rule via these proceedings, it would impede Proposed Intervenors' ability to protect their interests. Involvement in this litigation is necessary for Proposed Intervenors to protect their interests against all the above-described harms.

### D.    The CFPB will not adequately represent Intervenors' interests.

Proposed Intervenors satisfy Rule 24(a)'s inadequacy requirement. The burden of proving that the existing parties do not adequately represent Intervenors' interests is minimal. *Glickman*, 256 F.3d at 380. "The potential intervener need only show that the representation *may* be inadequate." *Id.* (quoting *Espy*, 18 F.3d at 1207); *see Brumfield*, 749 F.3d at 346 ("We cannot say for sure that the state's more extensive interests will *in fact* result in inadequate representation, but surely they might, which is all that the rule requires."); *Heaton v. Monogram Credit Card Bank of Ga.*, 297 F.3d 416, 425 (5th Cir. 2002) (Lack of adequate representation can be shown even in cases where the intervenor's and the government agency's interest "may diverge in the future, even though, at [the time of intervention] they appear to share common ground."). While adequate representation is presumed when a "putative representative is a governmental body," that presumption may be overcome when an intervenor's "'interest is in fact different from that of the [governmental entity] and that the interest will not be represented by [it].'" *Texas*, 805 F.3d at 661, 662 (quoting *Edwards*, 78 F. 3d at 1005); *see Trbovich v. United Mine Workers of Am.*, 404 U.S. 528 (1972) (reversing denial of a request to intervene by a private party who asserted a related interest to that of an existing government party); *Sierra Club v. Espy*, 18 F.3d 1202, 1208 (5th Cir. 1994) (holding that private timber purchaser associations were entitled to intervene in support of a government program, and explaining that "[t]he government must represent the broad public interest, not just the . . . concerns of the timber industry"). Divergence of interests regarding a stay or delay in resolution can satisfy this requirement. *Entergy Gulf States Louisiana, L.L.C. v. U.S. E.P.A.*, 817 F.3d 198, 204-06 (5th Cir. 2016).

Here, this standard is clearly met. First, starting on February 5, Proposed Intervenors' interests have diverged from the Bureau's: The Bureau has requested an extension of the effective date of the Rule, while Proposed Intervenors are clearly harmed by this delay, which leads to

continued harm to Mr. Deeds's and Mr. Coleman's credit and requires Tzedek DC and NMCLP to continue to allocate resources to this issue. *See Entergy*, 817 F.3d at 204-06.

It is abundantly clear that the interests of Proposed Intervenors' and the government will continue to diverge. This administration, including Acting Director Vought, has been vocal about its hostility to the work—and, indeed, the very existence—of the Bureau. President Trump has stated publicly that he plans to "eliminate" the CFPB, and in a matter of days, Acting Director Vought engaged in mass layoffs, refused funding, canceled $100 million in contracts, closed the CFPB headquarters, instructed all CFPB employees to "not perform any work tasks," and required staff to "suspend the effective dates" of all final rules that have not yet taken effect. *See, e.g.*, Email from Acting Director Vought, obtained from Philip Melanchthlon Wegmann (@PhilipWegmann), X, https://x.com/philipwegmann/status/1888409309937070128?s=46&t=I41S_6HTDCUVmJ5HUDfHw, attached as Ex. 7; Laura Wamsley, *New CFPB chief closes headquarters, tells all staff they must not do 'any work tasks,'* NPR, Feb. 10, 2025, https://www.npr.org/2025/02/08/nx-s1-5290914/russell-vought-cfpb-doge-access-musk; Kate Berry, *President Trump confirms his goal is to eliminate the CFPB*, Am. Banker, Feb. 11, 2025, https://www.americanbanker.com/news/president-trump-confirms-his-goal-is-to-eliminate-the-cfpb. The administration's efforts to effectively close the CFPB and end its operations have been paused only as the result of a recent court order. *See* Order, *Nat'l Treasury Employees Union v. Vought*, 1:25-cv-00381-ABJ (D.D.C. Feb. 14, 2025), attached as Ex. 8.

Under the Acting Director's current instructions, the Bureau may not defend the Rule. The Administration's other recent activity further indicates a strong likelihood that the CFPB will—at minimum—fail to vigorously defend the validity of the Rule on the merits. Thus, even if the Court "cannot say for sure that the state's more extensive interests will in fact result in inadequate

representation," it is clear that "they *might*, which is all that [Rule 24] requires." *Brumfield*, 749

F.3d at 346 (emphasis added).

**II.     Alternatively, Proposed Intervenors Should Be Granted Permission to Intervene.**

Permissive intervention is also appropriate here. Rule 24(b) allows this Court to "permit

anyone to intervene" who has filed a "timely motion" and "has a claim or defense that shares with

the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1), (B); *Stallworth v.*

*Monsanto Co.*, 558 F.2d 257, 269 (5th Cir. 1977). "[C]laim or defense" is "construed liberally."

*In re Estelle*, 516 F.2d 480, 485 (5th Cir. 1975); *see also Stallworth*, 558 F.2d at 269. The "common

question of law or fact" requirement is satisfied so long as an intervenor's arguments are "related

to" the claims in the lawsuit. *Cf. Trans Chem. Ltd. v. China Nat'l Mach. Imp. & Exp. Corp.*, 332

F.3d 815, 825 (5th Cir. 2003) (common question of law and fact must be "related to" proposed

intervenor's arguments). Courts often allow organizations to permissively intervene where, as

here, the potential intervenors may provide unique perspective or expertise for a shared legal

defense. The Proposed Intervenors qualify for permissive intervention because, at minimum, the

Agency Defendants' and Proposed Intervenors' defense of the rule will share a common issue of

law. Proposed Intervenors will provide the Court with their unique perspective and experience

about the true impacts of the Rule as well as provide the Court with a robust legal defense of the

Rule that may otherwise be lacking.

**CONCLUSION**

For the foregoing reasons, Proposed Intervenors ask the Court to grant their motion to

intervene.

Dated: February 24, 2025

Respectfully submitted:

/s/ *Jennifer S. Wagner*

15

Jennifer S. Wagner (admitted *pro hac vice*)
Chi Chi Wu (motion for admission *pro hac vice* forthcoming)
National Consumer Law Center
7 Winthrop Square
Boston, MA 02110
Ph: 617-542-8010
jwagner@nclc.org
cwu@nclc.org

Carla Sanchez-Adams
Texas Bar No. 24070552
National Consumer Law Center
1001 Connecticut Avenue, NW, Suite 510,
Washington, DC, 20036
Ph: 202-452-6252
Fax: 202-296-4062
csanchezadams@nclc.org

*Counsel for Proposed Intervenors*

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on February 24, 2025, the foregoing document was filed on the Court's

CM/ECF system which sent notification of such filing to all counsel of record.

*/s/ Jennifer S. Wagner*

<u>**CERTIFICATE OF CONFERENCE**</u>

Undersigned counsel has complied with the meet and confer requirement in Local Rule

CV-7(h) by contacting counsel for all parties by email on February 18 and again on February 19,

2025. This motion is opposed by Plaintiffs.

Undersigned counsel further attempted to contact both counsel of record for the CFPB by

telephone on February 21, 2025. Despite this outreach, counsel for the CFPB has not responded

with their client's position on this motion as of the time of this filing.

Counsel conferred by video conference with counsel for Plaintiffs on Friday, February 21.

Proposed Intervenors were represented by Jennifer Wagner; and Plaintiffs were represented by

Ryan Scarborough and Alexander More. The parties discussed the need for this motion in light of current stay of litigation, and undersigned counsel explained that filing motion during the stay was necessary in order to allow the matter to be fully briefed in time for Proposed Intervenors to appear at the scheduled hearing on the motion for preliminary injunction to defend the Rule, which is scheduled to occur immediately after the expiration of the stay. On the substance, each party stated their position and attempted in good faith to reach a resolution of the matters raised by the motion, but no resolution could be reached and an impasse was reached, thus necessitating this motion.

*/s/ Jennifer S. Wagner*