**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| **CORNERSTONE CREDIT UNION LEAGUE and CONSUMER DATA INDUSTRY ASSOCIATION,**<br><br>　　　　**Plaintiffs,**<br><br>　　　　**v.**<br><br>**CONSUMER FINANCIAL PROTECTION BUREAU and RUSSELL VOUGHT in his official capacity as Acting Director of the CFPB,**<br><br>　　　　**Defendants.** | **No. 4:25-cv-00016-SDJ** |

**DEFENDANT-INTERVENORS' OPPOSITION TO
JOINT MOTION TO APPROVE CONSENT JUDGMENT AND
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................. 1

II.     BACKGROUND ................................................................. 2

III.    ARGUMENT ..................................................................... 8

   A.   THE APA DOES NOT PERMIT THE CFPB TO REPEAL A DULY PROMULGATED RULE
        VIA CONSENT JUDGMENT RATHER THAN NOTICE AND COMMENT .......................... 8

   B.   THE MOTIONS FAIL ON THE MERITS. ............................................... 11

      1.   The CFPB had clear authority to repeal a prior regulation. ........................... 12

         a.   The CFPB had authority to repeal § 1022.30(d). ........................................ 13

         b.   15 U.S.C. § 1681b(g)(2) did not override its prohibition with a technical,
              conforming amendment ensconced in a parenthetical. ................................. 14

      2.   The CFPB had authority under 15 U.S.C. § 1681s(e)(1) to adopt
           § 1022.38(b). ...................................................................... 17

         a.   Section 1022.38(b) tracks the authorizing language of the statute. .............. 17

         b.   15 U.S.C. § 1681b(g)(1)(C) imposes an additional requirement after an
              exception is granted; it does not grant its own exception. ........................... 18

         c.   The Rule does not improperly incorporate preempted state laws. ................ 21

   C.   PLAINTIFFS HAVE FAILED TO DEMONSTRATE THE ADDITIONAL REQUIREMENTS FOR
        A PRELIMINARY INJUNCTION. ............................................... 23

      1.   Plaintiffs have failed to demonstrate imminent, irreparable harm.................... 23

      2.   The balance of harms and the public interest favor injunctive relief. .............. 25

IV.     CONCLUSION ................................................................. 25

## **TABLE OF AUTHORITIES**

**Cases**

*Aghaeepour v. N. Leasing Sys., Inc.*, 378 F. Supp. 3d 254 (S.D.N.Y. 2019) .............................. 22

*Arizona v. City & Cnty. of San Francisco, California*, 596 U.S. 763 (2022) ................................. 9

*Conservation Nw. v. Sherman*, 715 F.3d 1181 (9th Cir. 2013) ...................................................... 9

*Consumer Energy Council of Am. v. FERC*, 673 F.2d 425 (D.C. Cir. 1982), *aff'd*, 463 U.S. 1216 ................................................................................................................................................... 8, 11

*Credit Data of Arizona, Inc. v. State of Ariz.*, 602 F.2d 195 (9th Cir. 1979) ............................... 22

*Cyan, Inc. v. Beaver Cnty. Emps. Ret. Fund*, 583 U.S. 416 (2018) ........................................ 16, 17

*Davenport v. Farmers Ins. Grp.*, 378 F.3d 839 (8th Cir. 2004) .................................................... 22

*Dunn McCampbell Royalty Int., Inc. v. Nat'l Park Serv.*, 964 F. Supp. 1125 (S.D. Tex. 1995), *aff'd*, 112 F.3d 1283 (5th Cir. 1997) ............................................................................................... 12

*Encino Motorcars, LLC v. Navarro*, 579 U.S. 211 (2016) ........................................................... 13

*Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976) ...................................................................... 12

*F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009) ......................................................... 8

*Louisiana v. Biden*, 55 F.4th 1017 (5th Cir. 2022) ................................................................. 23, 24

*Louisiana v. Haaland,* No. 2:24-CV-00820, 2025 WL 761743 (W.D. La. Mar. 10, 2025) ......... 25

*Maryland v. King*, 567 U.S. 1301 (2012) ..................................................................................... 25

*Matter of GFS Indus., LLC*, 99 F.4th 223 (5th Cir. 2024) ........................................................... 17

*Mayfield v. United States Dep't of Lab.,* 117 F.4th 611 (5th Cir. 2024) ....................................... 21

*McCaughn v. Hershey Chocolate Co.*, 283 U.S. 488 (1931) ......................................................... 12

*Mexichem Specialty Resins, Inc. v. Env't Prot. Agency.*, 787 F.3d 544 (D.C. Cir. 2015) .............. 9

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) ... 9

*Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92 (2015) ........................................................... 1, 8, 13

*Spivey v. Chitimacha Tribe of Louisiana*, 79 F.4th 444 (5th Cir. 2023)........................................ 14

*Sw. Elec. Power Co. v. United States Env't Prot. Agency*, 920 F.3d 999 (5th Cir. 2019)........... 15

*Tex. Health & Hum. Servs. Comm'n v. United States*, 166 F. Supp. 3d 706 (N.D. Tex. 2016) ... 23

*United States v. McClure*, 305 U.S. 472 (1939) ........................................................................ 19

*United States v. Texas,* 599 U.S. 670 (2023) ............................................................................... 9

*United States v. Wrightwood Dairy Co.*, 315 U.S. 110 (1942)..................................................... 12

*West Virginia v. Env't Prot. Agency*, 597 U.S. 697 (2022) ......................................................... 21

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ........................................................... 23

## Statutes

5 U.S.C. § 551(5) ........................................................................................................................ 8

5 U.S.C. § 553(e) ........................................................................................................................ 9

12 U.S.C. § 5512 ......................................................................................................................... 4

15 U.S.C. § 1681(a)(4) ............................................................................................................... 2

15 U.S.C. § 1681a(i) ............................................................................................................... 2, 13

15 U.S.C. § 1681b(a) ........................................................................................................... passim

15 U.S.C. § 1681b(f) .................................................................................................................. 18

15 U.S.C. § 1681b(g) ........................................................................................................... passim

15 U.S.C. § 1681c(a) ........................................................................................................... passim

15 U.S.C. § 1681e(a) .................................................................................................................. 24

15 U.S.C. § 1681s(e) ........................................................................................................... passim

15 U.S.C. § 1681s-2(a)(9) .......................................................................................................... 15

15 U.S.C. § 1681t ....................................................................................................................... 22

Dodd-Frank Act, Pub. L. 111-203, § 1088, 124 Stat. 1376 (2010) ........................................... 4

Fair and Accurate Credit Transactions Act, Pub. L. 108-159, 117 Stat. 1952 (2003)............ 15, 16

Cal. Civ. Code § 1371.56(C)(1)(A) ................................................................................................ 5

Cal. Civ. Code § 1785.13(a)(7) ..................................................................................................... 5

Cal. Civ. Code § 1785.20.6 ........................................................................................................... 5

Cal. Civ. Code § 1785.27 ............................................................................................................... 5

Cal. Civ. Code § 1786.18(a)(9) ..................................................................................................... 5

Colo. Rev. Stat. § 5–18–109 .......................................................................................................... 5

Conn. Gen. Stat. § 19a-673b ......................................................................................................... 5

Conn. Gen. Stat. § 20-7i ............................................................................................................... 5

815 Ill. Comp. Stat. Ann. 505/2EEEE .......................................................................................... 5

Md. Code Ann., Com. Law § 14–1213 ......................................................................................... 5

Md. Code Ann., Health-Gen. § 19–214.2(f) ............................................................................... 5

Md. Code Ann., Health-Gen. § 24–2501 ..................................................................................... 5

Md. Code Ann., Health-Gen. § 24–2502 ..................................................................................... 5

Minn. Stat. ch. 332C ...................................................................................................................... 5

N.J. Stat. Ann. § 56:11-56............................................................................................................. 5

N.Y. Pub. Health Law, art. 49–A ................................................................................................. 5

R.I. Gen. Law §§ 6-60-1 to 6-60-5 ............................................................................................... 5

Va. Code Ann. § 59.1-200(A)(79) ................................................................................................. 5

Va. Code Ann. § 59.1-444.1 .......................................................................................................... 5

9 Vt. Stat. Ann. § 2466d ............................................................................................................... 5

18 Vt. Stat. Ann. § 9485(b) ........................................................................................................... 5

Wash. Rev. Code § 19.16.100 ....................................................................................................... 5

Wash. Rev. Code § 19.16.250(27) .................................................................................... 5

Wash. Rev. Code § 19.182.040(1)(g) .............................................................................. 5

Wash. Rev. Code § 70.41.400(2), (3) .............................................................................. 5

Wash. Rev. Code ch. 70.54 (new section) ....................................................................... 5


**Regulations & Proposed Regulations**

Fair Credit Reporting Medical Information Regulations, 69 Fed. Reg. 23,380 (proposed Apr. 28, 2004) ....................................................................................................................... 3, 4, 12

Fair Credit Reporting Medical Information Regulations, 70 Fed. Reg. 70,664 (Nov. 22, 2005) ........................................................................................................................ passim

Prohibition on Creditors and Consumer Reporting Agencies Concerning Medical Information (Regulation V), 89 Fed. Reg. 51,682 (proposed June 18, 2024) ......................................... 6, 10

Prohibition on Creditors and Consumer Reporting Agencies Concerning Medical Information (Regulation V), 90 Fed. Reg. 3276 (Jan. 14, 2025). .......................................................... passim

12 C.F.R. § 1022.30(d) (2005)................................................................... 1, 7, 12, 15, 20

12 C.F.R. § 1022.30(e)........................................................................................................ 7

12 C.F.R § 1022.38(b) ........................................................................................ 8, 17, 20, 21


**Legislative History**

H.R. Rep. No. 108-263 (Sept. 4, 2003)..................................................................... 3, 11

S. Rep. No. 108-166, Amending Fair Credit Reporting Act (Oct. 17, 2003) .............................. 16


**Other Authorities**

American Hospital Association, Comments re: Small Business Advisory Review Panel for Consumer Reporting Rulemaking: Outline of Proposals and Alternatives Under Consideration (Oct. 30, 2020), https://www.aha.org/system/files/media/file/2023/10/AHA-Letter-CFPB-Medical-Debt-Reporting-Feedback.pdf ................................................................................ 6

American Medical Association, Comments on Proposed Rule, https://www.regulations.gov/document/CFPB-2024-0023-1000/comment ............................. 6

Comments on Proposed Rule, https://www.regulations.gov/document/CFPB-2024-0023-0001/comment................................................................................................................ 6

Community Catalyst, Petition for Rulemaking Pursuant to the Fair Credit Reporting Act (Apr. 13, 2023), https://www.consumerfinance.gov/rules-policy/petitions-rulemaking/community-catalyst-fcra/................................................................................................................... 10

Press Release, CFPB Kicks Off Rulemaking to Remove Medical Bills from Credit Reports (Sept. 21, 2023), https://www.consumerfinance.gov/about-us/newsroom/cfpb-kicks-off-rulemaking-to-remove-medical-bills-from-credit-reports/...................................................................... 6, 10

# I.    INTRODUCTION[1]

The Fair Credit Reporting Act (FCRA) and the Fair and Accurate Credit Transactions Act of 2003 (FACTA) were passed to safeguard consumer privacy and ensure against unfair use of consumer medical information in financial transactions. To this end, the statute prohibits medical information, including medical debts, from being disclosed in consumer credit reports and prohibit creditors from considering such information in making credit decisions, unless the information is necessary for insurance purposes or a regulatory exemption to the prohibition is promulgated. 15 U.S.C. § 1681b(g). In 2005, the regulators adopted such a regulatory exception, permitting consumers' masked (or coded) medical financial information to be obtained and used by creditors in connection with credit eligibility determinations if certain conditions were met. Fair Credit Reporting Medical Information Regulations, 70 Fed. Reg. 70,664 (Nov. 22, 2005) (codified at 12 C.F.R. § 1022.30).

In 2025, after years of consideration, an exhaustive notice-and-comment process yielding over 74,000 comments (vastly in favor of the Rule), and reliance on extensive evidence and research, the Consumer Financial Protection Bureau (CFPB) promulgated Prohibition on Creditors and Consumer Reporting Agencies Concerning Medical Information (Regulation V), 90 Fed. Reg. 3276 (Jan. 14, 2025) (Rule). The Rule does two things. First, it repeals the 2005 regulatory exemption. There is no question that an agency is entitled to do just this. *See Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 101 (2015). Second, the Rule furthers compliance with the statute by enacting requirements that ensure medical debt information is transmitted only if that information's consideration is permissible under applicable law. This is clearly permitted under

---

[1] Defendant-Intervenors join and incorporate herein the Defendants' arguments in opposition to the motion for preliminary injunction, prior to its change in position. *See* ECF No. 16 (CFPB Opp.).

FCRA's statutory rulemaking authority. 15 U.S.C. §§ 1681s(e), 1681b(a).

Over the past twenty years, it has been well-established that the FCRA only permits medical financial information to be shared or considered for credit decisions pursuant to the 2005 regulatory exception. Two weeks ago, the CFPB purported to change this when it suddenly adopted Plaintiffs' novel theory that the statute itself—which was designed to protect consumers from disclosure of their medical information—instead requires the opposite. This theory should be rejected because, first, a new administration may not sidestep notice-and-comment rulemaking through a consent judgment; and second, it is wrong on the merits. The Motion for Preliminary Injunction (Mot.), ECF No. 9, and Joint Motion for Entry of Consent Judgment, ECF No. 31, (collectively, pending motions) should therefore be denied.

## II.    BACKGROUND

The FCRA—one of the world's first data privacy laws—was passed in 1970 in response to public concern about the widespread dissemination of sensitive information about Americans. 90 Fed. Reg. at 3282. One of its main purposes was to enshrine a respect for consumers' right to privacy. *See* 15 U.S.C. § 1681(a)(4). In 2003, Congress enacted the FACTA, reflecting its considered view that getting sick should not affect a consumer's ability to obtain credit. 15 U.S.C. § 1681b(g)(2). The FACTA amended the FCRA to provide that, except as permitted by regulatory exception, "a creditor shall not obtain or use medical information . . . pertaining to a consumer in connection with any determination of the consumer's eligibility, or continued eligibility, for credit." *Id*. "Medical information" is defined to include information about medical debts. 15 U.S.C. § 1681a(i). As the agencies authorized to implement the statute explained: "Section 411(a) of the FACTA adds a new section 604(g)(2) to the FCRA. This provision contains a broad limitation on the ability of creditors to either obtain or use medical information in connection with credit

2

eligibility determinations." Fair Credit Reporting Medical Information Regulations, 70 Fed. Reg. at 70,666 (codified at 12 C.F.R. § 1022.30(b)).

The FACTA did, however, grant authority to banking regulators to enact regulations that would permit exceptions to the Act's prohibition, where such exceptions were "necessary and appropriate to protect legitimate operational, transactional, risk, consumer, and other needs . . . consistent with the intent . . . to restrict the use of medical information for inappropriate purposes." 15 U.S.C. § 1681b(g)(5)(A). As Congress explained when enacting the statute: "The section establishes that creditors are *not allowed* to obtain or use medical information for credit granting purposes. Certain exceptions are provided where authorized by Federal law, for insurance activities (including annuities), *and where determined to be necessary and appropriate by the financial regulators*." H.R. Rep. No. 108-263 (Sept. 4, 2003) (emphasis added). Thus, two exceptions exist, neither of which includes an exception for masked medical information as Plaintiffs claim. The regulators tasked with interpreting and implementing the statute in 2005 recognized this, stating that the FACTA "prohibits all creditors from obtaining or using key financial information that is also medical information in the credit underwriting process. [The statute] does *not contain any specific statutory exception* to this broad prohibition." Fair Credit Reporting Medical Information Regulations, 70 Fed. Reg. at 33,958, 33,962 (June 10, 2005) (emphasis added); *accord* Fair Credit Reporting Medical Information Regulations, 69 Fed. Reg. 23,380, 23,383 (proposed Apr. 28, 2004) ("Section 411(a) of the FACT Act adds a broad new limitation on the ability of creditors to obtain medical information. . . . Specifically, new section [§1681b](g)(2) provides that, *except as permitted by regulations,* a creditor shall not obtain or use medical information" for credit underwriting (emphasis added)).

The regulators adopted just such an exception in 2005. 70 Fed. Reg. at 70,667–68. The

regulators supported their decision to enact this broad exception with a single sentence in the notice of proposed rulemaking without citation to any evidence. 69 Fed. Reg. at 23,384; *see also* 70 Fed. Reg. at 70,667-68. Still, even under this regulatory exception, creditors could obtain or use medical information in a consumer report *only when that information was properly masked* pursuant to the FCRA, 15 U.S.C. § 1681c(a)(6). *See* 70 Fed. Reg. at 70,668.[2]

In 2011, Congress transferred rulemaking authority under much of the FCRA to the CFPB. *See* Pub. L. 111-203, § 1088, 124 Stat. 1376 (2010); 12 U.S.C. § 5512. This included both the authority to issue exceptions to the prohibition on creditor use of medical financial information, 15 U.S.C. § 1681b(g)(5), and authority to "prescribe regulations as may be necessary or appropriate to administer and carry out the purposes and objectives of this subchapter, and to prevent evasions thereof or to facilitate compliance therewith." 15 U.S.C. § 1681s(e)(1).

In the twenty years since the 2005 regulatory exception was enacted, significant research was conducted on the impact of medical debt on credit reports. A 2014 report found that medical debts were both less predictive for credit underwriting purposes than other debts and unfairly penalized consumers' credit scores. *See* 90 Fed. Reg. at 3322-23. A second report found that an astounding 52% of debt collection items on credit reports were for medical debts, and one in five credit reports had a medical debt on them. *See id.* at 3281. This and other research noted that these debts were due to unpredictable events, such as an accident or sudden illness; often the subject of insurance or billing disputes or problems; and generally the result of a confusing and haphazard

---

[2] Plaintiffs' claim that the 2005 regulation permitted the disclosure of non-masked medical information, Mot. at 2, 5, 11, is wrong. In fact, the regulators noted that the statutory coding provisions applied to all medical information disclosed on consumer reports pursuant to the new regulatory exception, such that additional clarification on coding was unnecessary. 70 Fed. Reg. at 70,668. And Plaintiffs themselves admit that medical debt information is masked when it appears on credit reports. Mot. at 5 ("For twenty years, CRAs have relied on the statute to report *coded* medical debt information . . . ." (emphasis added)).

medical billing system. *See id.* at 3278-79. Subsequently, the CFPB, Urban Institute, KFF (previously Kaiser Family Foundation), and others published several reports, studies, and data that found, *inter alia*, that reporting of medical debt was unreliable, it was less predictive than other debts of credit-worthiness, and masking methods did not adequately protect consumers' private medical information. *See, e.g.*, *id.* at 3278-91, 3318.

In addition, industry practices have changed. Starting in 2022, the three nationwide consumer reporting agencies (CRAs) removed a wide swath of medical debts from consumer reports, including all medical debts that had been outstanding for less than a year, all paid medical debts, and all medical debts with initial balances below $500, decreasing the total medical debts reported by 38%. *Id.* at 3280. These reforms resulted in the percentage of consumers with medical debt on their credit reports dropping from 14% to 5%—a 78% drop. *Id.* at 3333. Moreover, twelve states—including two of the country's most populous—have limited or prohibited the use of medical debt on credit reports.[3] *See id*. Medical providers, including the Department of Veterans Affairs, have severely limited the use of credit reporting to collect medical debts. *See id*. Major credit score providers have stopped considering medical collections in calculating credit scores, and major creditors, including mortgage loan providers, do not consider medical debt in underwriting. *See id.* at 3280-81.

In 2023, the CFPB reconsidered whether the 2005 regulatory exception for medical

---

[3] Cal. Civ. Code §§ 1785.13(a)(7), 1785.20.6, 1785.27, 1786.18(a)(9), 1371.56(C)(1)(A); Colo. Rev. Stat. § 5–18–109); Conn. Gen. Stat., §§ 19a-673b, 20-7i; 815 Ill. Comp. Stat. Ann. 505/2EEEE; Md. Code Ann., Com. Law § 14–1213; Md. Code Ann., Health-Gen. §§ 19–214.2(f, 24–2501, 24–2502; Minn. Stat. ch. 332C; N.J. Stat. Ann. § 56:11-56; N.Y. Pub. Health Law, art. 49–A; R.I. Gen. Laws §§ 6-60-1 to 6-60-5; Va. Code Ann. §§ 59.1-200(A) (79, 59.1-444.1; S.B. 27, 2025-2026 Leg. Sess. (Vt. 2025) (*to be codified at* 9 Vt. Stat. Ann. § 2466d; 18 Vt. Stat. Ann. § 9485(b)); Wash. Rev. Code §§ 19.16.100, 19.16.250(27), 19.182.040(1) (g), 70.41.400(2), (3, Wash. Rev. Code ch. 70.54 (new section).

financial information furthered Congress's original intent "to safeguard consumers' privacy and restrict the use of medical information for inappropriate purposes." *Id.* at 3277; *see also id.* at 3276. In September 2023, the CFPB announced a proposed rulemaking to repeal the 2005 exception and prohibit the inclusion of such information in credit reports sent to creditors. *See* Press Release, CFPB Website, CFPB Kicks Off Rulemaking to Remove Medical Bills from Credit Reports (Sept. 21, 2023), https://www.consumerfinance.gov/about-us/newsroom/cfpb-kicks-off-rulemaking-to-remove-medical-bills-from-credit-reports/. In June 2024, the CFPB issued the proposed rule. Prohibition on Creditors and Consumer Reporting Agencies Concerning Medical Information (Regulation V), 89 Fed. Reg. 51,682 (proposed June 18, 2024). The CFPB received over 74,000 comments on the proposal, the vast majority of which indicated that the Rule would be a boon to consumers, the healthcare system, and the economy. *See* Comments on Proposed Rule, https://www.regulations.gov/document/CFPB-2024-0023-0001/comment; 90 Fed. Reg. at 3282.[4]

The CFPB issued the final Rule on January 7, 2025. 90 Fed. Reg. 3276. In doing so, it considered, *inter alia*, the 74,000 comments, feedback from the Small Business Review Advisory Panel, data from Centers for Medicare and Medicaid Services, and "academic research, reports on research by industry and trade groups, [and] practitioner studies." *Id.* at 3319. It also considered a study by the CFPB regarding the value of medical debt to the predictiveness of credit scoring models. *See* 89 Fed. Reg. at 51,718; 90 Fed. Reg. at 3352.

In its analysis, the CFPB went into considerable detail to explain why the 2005 regulatory

---

[4] These included support from the American Medical Association (AMA) and American Hospital Association. *See* Comments re: Small Business Advisory Review Panel for Consumer Reporting Rulemaking: Outline of Proposals and Alternatives Under Consideration (Oct. 30, 2020), https://www.aha.org/system/files/media/file/2023/10/AHA-Letter-CFPB-Medical-Debt-Reporting-Feedback.pdf; AMA Comments, available at https://www.regulations.gov/document/CFPB-2024-0023-1000/comment.

exception was no longer supported, such that its repeal was appropriate. *See* 90 Fed. Reg. at 3285, 3295. Based on the record, the CFPB concluded that medical debt has different characteristics from other types of debt because medical debt often arises from unforeseen events, consumers cannot shop around for medical services, and medical bills have unusually high rates of inaccuracy. *See id*. at 3278-79. The CFPB relied on empirical evidence to find that medical debt has less value than other types of debts in predicting future default for credit underwriting purposes and that its removal would not lessen the predictive value of credit reports and scores for underwriting. *See id.* at 3280-81, 3332-40. In reaching this conclusion, the CFPB noted that credit scoring provider FICO affords less weight to medical debts in its later scoring models, *id.* at 3280, 3333-34; scoring provider VantageScore (a joint venture of the nationwide CRAs) has stopped considering medical debt altogether, *id.* at 3280, 3339; and the Federal Housing Administration, Fannie Mae, and Freddie Mac do not consider medical debt in their automated underwriting systems, *id.* at 3333 & n. 302. For these and other reasons, the CFPB decided that consideration of medical debt is not necessary to meet the legitimate needs of consumers or creditors, as would be required for the exception to remain statutorily authorized under § 1681b(g)(5). *See id.* at 3300.

In the final Rule, the CFPB repealed the broad 2005 financial information exception previously codified at 12 C.F.R. § 1022.30(d), but left in place other narrower exceptions to the general prohibition on obtaining or using medical debt for credit determinations,[5] *id* § 1022.30(b), (e)(1). The Rule also restates the CRAs' statutory responsibilities to safekeep medical debt

---

[5] The remaining exceptions include that a creditor may use this information to determine whether use of a power of attorney is triggered by a medical condition; to comply with applicable law; to determine whether the consumer qualifies for specific programs or benefits dedicated to consumers with medical conditions; to detect or prevent fraud; to finance medical products or services; if the consumer so requests; or to determine whether credit insurance eligibility has been triggered. 12 C.F.R. § 1022.30(e).

information, clarifying that CRAs may provide medical debt information to a creditor only if the CRA (1) has reason to believe the creditor intends to use the medical debt information in a legally permissible manner, and (2) has reason to believe the creditor is not otherwise legally prohibited from obtaining or using the medical debt information. 90 Fed. Reg. at 3373–74. The new provision of the Rule, § 1022.38(b), implements the FCRA's "permissible purposes" provision, which authorizes CRAs to furnish consumer reports only under certain enumerated circumstances, 15 U.S.C. § 1681b(a)(3)(A), and "facilitate[s] compliance" and "prevent[s] evasions" of the FCRA, 15 U.S.C. § 1681s(e)(1). 90 Fed. Reg. at 3308.

### III.    ARGUMENT[6]

#### A.  The APA Does Not Permit the CFPB to Repeal a Duly Promulgated Rule Via Consent Judgment Rather than Notice and Comment.

First, the Joint Motion to Approve Consent Judgment should be denied because it violates the Administrative Procedures Act (APA). The APA sets forth the steps that federal agencies must take in order to promulgate regulations. The APA includes "repealing a rule" in the definition of "rule making," 5 U.S.C. § 551(5); thus, the procedural rules that apply to a "rule making" apply to repeals. The APA mandates that "agencies use the same procedures when they amend or repeal a rule as they used to issue the rule in the first instance." *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 101 (2015); *see also F.C.C. v. Fox Television Stations, Inc*., 556 U.S. 502, 515 (2009); *Consumer Energy Council of Am. v. FERC*, 673 F.2d 425, 446 (D.C. Cir. 1982), *aff'd*, 463 U.S. 1216 (1983). Thus, when repealing a rule, "the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts

---

[6] Plaintiffs, who carry the burden, have not moved for judgment on Count IV of their Complaint. Defendant-Intervenors do not oppose consolidation of the merits as to Counts I, II, and III, as they raise statutory claims that do not involve consideration of record evidence. Because no party has moved for judgment on Count IV, judgment on that basis cannot be granted.

found and the choice made.'" *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (citation omitted).

Courts have consistently required agencies to comply with the APA's notice and comment requirements in order to repeal rules, including in cases where an agency attempted to repeal a rule by entering a consent judgment in litigation challenging a rule. As the D.C. Circuit explained:

> [A]n agency's consent is not alone a sufficient basis for us to stay or vacate a rule. The court is not bound to accept, and indeed generally should not uncritically accept, an agency's concession of a significant merits issue. . . . The risk is that an agency could circumvent the rulemaking process through litigation concessions, thereby denying interested parties the opportunity to oppose or otherwise comment on significant changes in regulatory policy. If an agency could engage in rescission by concession, the doctrine requiring agencies to give reasons before they rescind rules would be a dead letter.

*Mexichem Specialty Resins, Inc. v. Env't Prot. Agency.*, 787 F.3d 544, 557 (D.C. Cir. 2015) (citations omitted); *see also Conservation Nw. v. Sherman*, 715 F.3d 1181, 1187 (9th Cir. 2013) (holding that "a district court abuses its discretion when it enters a consent decree that permanently and substantially amends an agency rule that would have otherwise been subject to statutory rulemaking procedures," and vacating a consent decree); *cf. United States v. Texas,* 599 U.S. 670, 694 (2023) (Gorsuch, J., concurring) (criticizing attempts by the government to "submit to a universal decree running against it in order to avoid the usual and important requirement, under the APA, that a regulation originally promulgated using notice and comment . . . may only be repealed through notice and comment" (cleaned up; citation omitted)); *Arizona v. City & Cnty. of San Francisco, California*, 596 U.S. 763, 765 (2022) (Roberts, C.J., concurring) (same).

This court should reject the current CFPB's attempt to repeal a duly issued regulation by means of a consent judgment rather than through notice-and-comment rulemaking. The prior CFPB administration spent over eighteen months in the rulemaking process, which was initiated by a formal petition for rulemaking in April 2023 under the APA, 5 U.S.C. § 553(e). *See*

Community Catalyst, Petition for Rulemaking Pursuant to the Fair Credit Reporting Act (Apr. 13, 2023), https://www.consumerfinance.gov/rules-policy/petitions-rulemaking/community-catalyst-fcra/. The CFPB held a public hearing in July 2023 and, in September 2023, announced a rulemaking along with an outline of proposals for a Small Business Advisory Review Panel, which it convened over a two-day period for this purpose. *See* CFPB Kicks Off Rulemaking to Remove Medical Bills from Credit Reports, *supra* at 6; *see also* 90 Fed. Reg. at 3319. The CFPB also conducted a study of a one-in-fifty sample of credit reporting files obtained from a nationwide CRA regarding the value of medical debt to the predictiveness of credit scoring models. *See* 89 Fed. Reg. at 51,718-35.

Only then did it issue the proposed rule in June 2024. 89 Fed. Reg. 51,682. Between the issuance of the proposed rule and the final rule in January 2025, the CFPB considered and analyzed a vast and varied amount of evidence, feedback, and research. *See supra* Part II; 90 Fed. Reg. at 3319. In short, to issue the Rule, the CFPB went through a thorough, detailed, painstaking process and conducted its own independent research, which, upon review, provided ample support for the Rule. The CFPB exhaustively responded to comments and set forth its reasoning and support in ninety-nine pages of dense, three-column discussion in the Federal Register. Now, in its effort to withdraw the Rule, the current CFPB has done none of that. Instead, it merely joins a five-page motion agreeing with the industry Plaintiffs' legal arguments—the very legal arguments it considered at length in the rulemaking and refuted. *See* 90 Fed. Reg. at 3302-04.

The joint motion is wholly inadequate under the APA, and it pales in comparison in substance to the massive administrative record supporting the Rule, including research reports and feedback from thousands of stakeholders. These stakeholders, some of whom comprise or represent the interests of the 15 million consumers who have medical debt on their credit reports,

deserve an opportunity to be heard—as the APA requires. It has long been established that the "value of notice and comment prior to repeal of a final rule is that it ensures that an agency will not undo all that it accomplished through its rulemaking without giving all parties an opportunity to comment on the wisdom of repeal." *Consumer Energy Council of Am. v. FERC*, 673 F.2d 425, 446 (D.C. Cir. 1982), *aff'd*, 463 U.S. 1216. The APA demands the CFPB provide the same thorough and reasoned analysis to repeal the rule as it did to issue it. The Joint Motion for Entry of Consent Judgment should therefore be denied.

### B.  The Motions Fail on the Merits.[7]

The arguments advanced in the pending motions depend on a critically flawed understanding of both administrative procedure and the statutes at issue. In fact, the CFPB properly repealed a regulation through notice-and-comment rulemaking, as the APA requires, and then adopted a new regulation that tracks the language of the authorizing statute, again in accordance with the APA.

Plaintiffs' arguments to the contrary are not supported. The FCRA and FACTA were passed to protect consumers from unwarranted disclosure of their medical information and from improper use of such information in credit underwriting. Congress authorized the CFPB to enact regulations to further those purposes, including creating regulatory exceptions in limited and proscribed circumstances. 15 U.S.C. § 1681b(g)(2). This is clear from the text and structure of the statute, *see infra*; from its purpose and legislative history, *see* H.R. Rep. No. 108-263, at 53 (explaining that the statute "establishes that creditors are not allowed to obtain or use medical information for credit granting purposes" and that the only exceptions are for insurance activities

---

[7] To the extent that the Court finds for Plaintiffs on some but not all of their claims, the Court should vacate only those portions of the Rule that are found to have been enacted contrary to the CFPB's statutory authority. *See* 90 Fed. Reg. at 3351 (discussing severability).

and by regulation); and from the consistent interpretation of the statute over time by every regulator until two weeks ago, *see* 70 Fed. Reg. at 33,958, 33,962 (2005 regulators explaining that § 1681b(g)(2) "does not contain any specific statutory exception to this broad prohibition" on obtaining or using medical information); 69 Fed. Reg. at 23,383 (same).[8] Plaintiffs would have this Court adopt the *opposite* reading of the statute and hold that the FCRA and FACTA somehow—despite their plain language and history—*require* disclosure of medical information and explicitly authorize creditors to consider medical information. But the masking provisions Plaintiffs point to create *additional* protections, after another exception applies, not fewer. Because Plaintiffs' central premise is flawed, their arguments fail.

Plaintiffs assert that the CFPB lacked authority to promulgate the Rule because it conflicts with the plain language of the statute. Mot. at 7 (citing *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024)). This argument is not true, as explained below. Moreover, the CFPB promulgated the Rule pursuant to specific rulemaking authority granted by Congress, which expressly "authorized [the CFPB] to exercise a degree of discretion," *Loper Bright*, 603 at 394-95.

### 1. The CFPB had clear authority to repeal a prior regulation.

The Rule first repeals the 2005 regulatory exemption that broadly permitted creditors to obtain and use medical financial information in credit determinations (former § 1022.30(d)). This is consistent with the CFPB's regulatory authority.

---

[8] Plaintiffs quote a portion of testimony of a co-sponsor (but not the drafter) of the FACT Act from committee hearings, Mot. at 9, 12, that is expressly contradicted by the House Report. But "[t]he opinions of some members of [Congress], conflicting with the explicit statements of the meaning of the statutory language made by the Committee reports . . . , are not to be taken as persuasive of the Congressional purpose." *United States v. Wrightwood Dairy Co.*, 315 U.S. 110, 125 (1942); *see also, e.g.*, *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 203 n.24 (1976); *McCaughn v. Hershey Chocolate Co.*, 283 U.S. 488, 493 (1931); *Dunn McCampbell Royalty Int., Inc. v. Nat'l Park Serv.*, 964 F. Supp. 1125, 1137 (S.D. Tex. 1995), *aff'd*, 112 F.3d 1283 (5th Cir. 1997).

### a.  The CFPB had authority to repeal § 1022.30(d).

The FCRA prohibits consideration of medical information, including medical debt (15 U.S.C. § 1681a(i)), 15 U.S.C. § 1681b(g)(2), unless the information meets certain discrete exceptions. The CFPB may promulgate a regulatory exception to the general prohibition, but only after determining that allowing creditors to obtain or use medical information is "necessary and appropriate to protect legitimate operational, transactional, risk, consumer, and other needs" and that the exception is "consistent with [Congress's] intent . . . to restrict the use of medical information for inappropriate purposes." 15 U.S.C. § 1681b(g)(5).

In 2005, two years after passage of the FACTA, the banking regulators promulgated an exception pursuant to this provision after notice-and-comment rulemaking under the APA. *See* 70 Fed. Reg. at 70,665. In 2025, after conducting a thorough analysis of empirical evidence and soliciting, reviewing, and responding to public comments, the CFPB determined that allowing creditors to use medical information under the prior financial information exception no longer met the statutory standard; accordingly, it repealed the regulatory exception. *See* 90 Fed. Reg. at 3277 ("With respect to information concerning a consumer's medical debts, the CFPB has concluded that it generally is neither 'necessary and appropriate to protect legitimate operational, transactional, risk, consumer, and other needs,' nor consistent with Congress's intent 'to restrict the use of medical information for inappropriate purposes,' for creditors to consider such sensitive financial information in underwriting." (quoting 15 U.S.C. § 1681b(g)(5)).

Agencies are free to change their existing policies (including regulations) so long as they provide a reasoned explanation for the change. *See Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016). To amend or repeal a rule, an agency must use the same procedures it used to issue the rule in the first instance. *See Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 101 (2015).

The Rule was promulgated following notice-and-comment rulemaking, just as the 2005 regulation was; and the CFPB not only provided a reasoned explanation, but it relied on a robust body of evidence and research supporting its repeal of the prior regulation. *See supra* Part II. Thus, the CFPB had the authority to repeal the 2005 regulatory exception. Because nothing in the statute *requires* such a regulation to be in place,[9] the challenge to this portion of the Rule must be rejected.

### b. 15 U.S.C. § 1681b(g)(2) did not override its prohibition with a technical, conforming amendment ensconced in a parenthetical.

Plaintiffs assert that the repeal of the 2005 statutory exception contradicts the requirements set forth in 15 U.S.C. § 1681b(g)(2). Mot. at 11-13. Plaintiffs misread the statute. Section 1681b(g)(2) sets forth the FCRA's limitation on creditors' access to medical information:

> Limitation on creditors[:] Except as permitted pursuant to paragraph (3)(C) or regulations prescribed under paragraph (5)(A), a creditor shall not obtain or use medical information (other than medical information treated in the manner required under section 1681c(a)(6) of this title) pertaining to a consumer in connection with any determination of the consumer's eligibility, or continued eligibility, for credit.

The provision defines only two exceptions to the creditor prohibition: (1) pursuant to § 1681b(g)(3)(C) (addressing insurance, not relevant here) or (2) pursuant to a regulatory exception promulgated under § 1681b(g)(5)(A). Section 1681b(g)(5)(A) states:

> The Bureau may, after notice and opportunity for comment, prescribe regulations that permit transactions under paragraph (2) that are determined to be necessary and appropriate to protect legitimate operational, transactional, risk, consumer, and other needs (and which shall include permitting actions necessary for administrative verification purposes), consistent with the intent of paragraph (2) to restrict the use of medical information for inappropriate purposes.

> Pursuant to this provision, the decision to adopt such a regulatory exception to "permit"

---

[9] 15 U.S.C. § 1681b(g)(5)(A), the provision under which the prior regulatory exception was created, states that the regulator "may" adopt regulations. By using "may," Congress made clear that it permits, but does not require, such regulations to be adopted. *See, e.g.*, *Spivey v. Chitimacha Tribe of Louisiana*, 79 F.4th 444, 447 (5th Cir. 2023). By the same token, any such regulation can clearly be properly repealed.

the use of some medical information in underwriting is within the CFPB's sound discretion. And under the plain language of the statute, only if the CFPB chooses to do so does the parenthetical in (g)(5) apply—the information shared pursuant to the exception may only be disclosed "in the manner required under section 1681c(a)(6)." 15 U.S.C. § 1681b(g)(2), (5). In other words, § 1681b(g)(2)'s cross-reference to § 1681c(a)(6) ensures that, if a regulatory exception permitted creditors to obtain or use medical information in underwriting, creditors are nevertheless prohibited from obtaining or using a consumer report containing the unmasked "name, address, and telephone number" of any medical information furnisher that has notified the CRA of its status as such a furnisher. 15 U.S.C. § 1681c(a)(6); *see also* 15 U.S.C. § 1681s-2(a)(9).[10]

The FACTA's structure and purpose further demonstrate that the FCRA does not require medical debt information to be shared. *See Sw. Elec. Power Co. v. United States Env't Prot. Agency*, 920 F.3d 999, 1028 (5th Cir. 2019) (courts interpret statutes by "looking at the full text of the statute . . . along with the statute's structure and its . . . purpose" (citation omitted)). The FACTA sought to "restrict the use of medical information" in the financial system. 15 U.S.C. § 1681b(g)(5)(A). To achieve this, the FACTA included two separate provisions. First, § 411 added the limitation on creditors' use of medical information in underwriting—i.e., § 1681b(g)(2)— subject to exceptions that the banking regulators might authorize by regulation, when the requirements are met. Pub. L. 108-159, § 411, 117 Stat. 1952 (2003). Then, § 412 required that

---

[10] Plaintiffs' parsing of the statutory language is tautological. *See* CFPB Opp. at 8 & n.3. Further, Plaintiffs' argument regarding these provisions has no bearing on portions of the 2005 regulatory exception that the Rule repeals. Section 1681c(a)(6) by its terms relates only to masking of medical financial information in *consumer credit reports*. The 2005 regulatory exception, however, is much broader—it permits a creditor to "obtain and use medical information" for credit decisions in a variety of contexts, including when that information is included in applications for credit. 12 C.F.R. § 1022.30(d)(2)(ii). Plaintiffs' arguments regarding the repeal of provisions that are unrelated to § 1681c(a)(6) should be rejected out of hand.

CRAs mask medical furnishers' identity and contact information in consumer reports—i.e., § 1681c(a)(6). Notably, § 411 of the FACTA did not include the parenthetical cross-referencing § 1681c(a)(6) on masking. That parenthetical was added only in § 412(f) as a "technical and conforming amendment[]." Pub. L. 108-159, § 412(f).[11] This cross-reference ensures that any regulatory exception is consistent with the Act's masking provision barring consumer reports from disclosing a healthcare provider's identifying information.

Plaintiffs' argument that the parenthetical in § 1681b(g)(2) actively authorizes creditors to consider medical information if it is masked would create an exception that swallows the rule, and is therefore an improper reading of the statute. Critically, the parenthetical refers to "medical information" generally and is not limited to medical *debt* information. Thus, Plaintiffs' reading would allow a creditor to consider and deny a consumer credit based on *any* medical information, for example, that the consumer has a medical condition such as cancer, so long as the identity of the furnisher of that information was masked. Such a result would be absurd and contrary to the very reason § 1681b(g)(2) was enacted. Indeed, the 2005 regulatory exception—which allows medical debt to be disclosed if masked, *see* 70 Fed. Reg. at 70,668—would have been redundant and unnecessary under Plaintiffs' reading of the statute.

Plaintiffs essentially argue that Congress enacted a broad prohibition on creditors' consideration of medical information, and then, through a technical and conforming amendment, allowed an exception that eviscerates the prohibition. But the Supreme Court has held: "Congress does not make radical . . . change[s] through technical and conforming amendments." *Cyan, Inc.*

---

[11] While the accompanying Senate Report to the technical amendments includes a section-by-section analysis of the bill, setting forth all of its purposes, it does not discuss the parenthetical, thus indicating that the parenthetical did not substantively change the initial meaning of the statutory language and was solely meant to ensure internal consistency. *See* S. Rep. No. 108-166, Amending FCRA (Oct. 17, 2003).

*v. Beaver Cnty. Emps. Ret. Fund*, 583 U.S. 416, 431 (2018) (cleaned up; citation omitted); *see also Matter of GFS Indus., LLC*, 99 F.4th 223, 229 (5th Cir. 2024) (concluding that Congress would not have drastically modified a statute "through a cross-reference in a 'mere conforming amendment'" (quoting *Cyan*, 583 U.S. at 431)). Plaintiffs' interpretation cannot be squared with Congress's stated intention to prohibit the use of medical information in making credit decisions.

**2. The CFPB had authority under 15 U.S.C. § 1681s(e)(1) to adopt § 1022.38(b).**

*a. Section 1022.38(b) tracks the authorizing language of the statute.*

Having concluded that a creditor exemption was no longer necessary or appropriate, the CFPB was authorized to adopt 12 C.F.R. § 1022.38(b)(1) and (b)(2) to ensure that medical debt is included in consumer credit reports only when that information is being used for a permissible purpose. These provisions of the Rule state:

> Limitation regarding prohibited medical debt information. A consumer reporting agency may include medical debt information, as defined in § 1022.3(j), in a consumer report furnished to a creditor only if the consumer reporting agency:
> (1) Has reason to believe the creditor intends to use the medical debt information in a manner not prohibited by § 1022.30; and
> (2) Has reason to believe the creditor is not otherwise legally prohibited from obtaining or using the medical debt information, including by a State law that prohibits a creditor from obtaining or using medical debt information.

12 C.F.R. § 1022.38(b). These provisions were adopted pursuant to 15 U.S.C. § 1681s(e)(1):

> The Bureau shall prescribe such regulations as are necessary to carry out the purposes of [the FCRA], except with respect to sections 1681m(e) and 1681w of this title. The Bureau may prescribe regulations as may be necessary or appropriate to administer and carry out the purposes and objectives of this subchapter, and to prevent evasions thereof or to facilitate compliance therewith.

This rulemaking authority is just the type of delegation for which administrative agencies are entitled to deference. *Loper Bright*, 603 U.S. at 394-95 (explaining that "the agency is authorized to exercise a degree of discretion" when a statute delegates rulemaking authority using terms like "'appropriate' or 'reasonable'"). An agency's interpretation of a statute "may be especially

informative especially to the extent that it rests on factual premises within the agency's expertise." *Id.* at 402 (internal quotations omitted).

The FCRA protects consumers by barring CRAs from sharing sensitive consumer information in consumer reports other than for an enumerated permissible purpose. 15 U.S.C. § 1681b(a), (f). Specifically, a creditor "shall not use or obtain a consumer report for any purpose unless—(1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section . . . ." 15 U.S.C. § 1681b(f). And a CRA may only furnish a consumer report "[t]o a person which it has reason to believe" will use the report for a permissible purpose. 15 U.S.C. § 1681b(a). The affirmative provisions of the Rule do nothing other than restate these requirements by cross-reference to existing laws and regulations. Thus, nothing in the text of the Rule runs contrary to statute or law. As a result, Plaintiffs' claims fail.

### b. 15 U.S.C. § 1681b(g)(1)(C) imposes an additional requirement after an exception is granted; it does not grant its own exception.

Plaintiffs assert that 15 U.S.C. § 1681b(g)(1)(C) explicitly authorizes the CRAs to include medical debts in consumer reports so long as the information is masked. Mot. at 8-10. This provision sets forth that a CRA may never furnish a report with medical information "unless" aspects of the information are masked or another exception applies.[12] Plaintiffs argue that use of

---

[12] The statute reads:

> Limitation on consumer reporting agencies[:] A consumer reporting agency shall not furnish . . . a consumer report that contains medical information (other than medical contact information treated in the manner required under section 1681c(a)(6) of this title) about a consumer, unless--
> (A) if furnished in connection with an insurance transaction [with consumer consent];
> (B) if furnished for employment purposes or in connection with a credit transaction [and the information is relevant or the consumer consents]; or
> (C) the information to be furnished pertains solely to transactions, accounts, or balances relating to debts arising from the receipt of medical services, products, or devises, where such information, other than account status or amounts, is restricted

the term "unless" overrides all other statutory provisions that limit the inclusion of medical debt. But § 1681b(g)(1)(C) is not an affirmative authorization—it simply requires that, when disclosure is otherwise authorized, the information be masked.

The CFPB explained that this specific provision "does not immunize such anonymized information from restrictions contained in other [FCRA] provisions." 90 Fed. Reg. at 3303. This explanation is "in accord with the presumption that a proviso 'refers only to the provision to which it is attached.'" *United States v. McClure*, 305 U.S. 472, 478 (1939) (internal citation omitted). Contrary to the Plaintiffs' argument, the word "unless" (as commonly understood) refers only to the language that it specifically modifies, i.e., the prohibition specifically contained in § 1681b(g)(1); it does not broadly permit CRAs to furnish masked medical debt information in violation of other provisions of the FCRA, such as the permissible purpose restrictions. *See* 90 Fed. Reg. at 3303.

Plaintiffs' reasoning would impermissibly limit the broad grant of rulemaking authority in § 1681s(e) to implement the permissible purpose requirement in § 1681b(a) or other provisions of the FCRA. For instance, § 1681c(a) generally prohibits the reporting of adverse information older than seven years. Using Plaintiffs' reasoning—that any specific prohibitions in the FCRA override the permissible purpose requirement in § 1681b(a)—would mean that the CFPB would be required to allow reporting of *all information* less than seven years old because § 1681c(a) permits such information. Based on this logic, the CFPB would be precluded from prohibiting reporting of information that creditors may not legally consider under other statutory restrictions, such as race

---

or reported using codes that do not identify, or do not provide information sufficient to infer, the specific provider or the nature of such services, products, or devices, as provided in section 1681c(a)(6) of this title.
15 U.S.C. § 1681b(g)(1)

or gender pursuant to the Equal Credit Opportunity Act.

In other words, § 1681b(g)(1)(C) requires that—when an exception to the prohibition on consideration of medical information in § 1681b(g)(2) has been created pursuant to the authority in § 1681b(g)(5)(A)—that information may be provided only in an anonymized manner. *See* 90 Fed. Reg. at 3303. It does not, independently, create such an exception, nor does it override the separate and independent requirement that the CRA must have reason to believe that the recipient of a report has a permissible purpose per § 1681b(a). If Congress had intended to create a third statutory exception for when medical information could be used by creditors, it could easily have done so by including it with the other two exceptions at the start of § 1681b(g)(2); instead, the parenthetical about masking was listed next to "medical information" to describe the type of medical information that may be permitted pursuant to the two exceptions.

Relying on their incorrect interpretation of the statutory language, Plaintiffs nonetheless argue that the CFPB's "[r]eliance on § 1681s(e) is . . . specious." Mot. at 10. This is wrong. The 2005 regulatory exception to the statutory prohibition previously made it permissible for a CRA to share medical debt information when it had "reason to believe" the recipient intended to use that information in making a credit decision involving the consumer. 15 U.S.C. § 1681b(a)(3)(A); 12 C.F.R. § 1022.30(d) (2005). However, because the Rule repeals the 2005 broad exception for medical debt information and reinstates the statute's general prohibition on sharing medical debt information in connection with any determination of the consumer's eligibility for credit, it is now no longer generally permissible for a creditor "to use that information in connection with a credit transaction"—so there is no permissible purpose of the report, unless one of the other regulatory or statutory exceptions applies. *See* 90 Fed. Reg. at 3307-08. Thus, the CFPB properly utilized its rulemaking authority under § 1681s(e)(1) to enact § 1022.38(b), which ensures that a CRA only

provides medical debt information to a creditor when the CRA "[h]as reason to believe the creditor" is not legally prohibited from using the information. Where a creditor is legally prohibited from obtaining or using medical debt information by virtue of law, a CRA would have no "reason to believe" that the creditor will (unlawfully) use that information in connection with a credit transaction. *See id*.[13]

### c.   The Rule does not improperly incorporate preempted state laws.

Plaintiffs challenge the restriction in § 1022.38(b)(2) that prohibits CRAs from sharing medical debts when creditors are prohibited from considering them under federal or state law.

Plaintiffs first argue that the Rule exceeded the CFPB's authority under 15 U.S.C. § 1681s(e) to implement the permissible use requirement in § 1681b(a); they claim the statute does not limit what CRAs can include in a consumer report. Plaintiffs' argument has no connection with the actual text of the statute. *See supra* Part III.B.2.a, b; CFPB Opp. at 13-14. In fact, CRAs are required by statute to limit the information provided to creditors to information that the CRAs believe will be used for a permissible purpose. 15 U.S.C. § 1681b(a).[14]

Plaintiffs next argue that the Rule requires CRAs to comply with preempted state laws. Plaintiffs' argument is internally contradictory and irrelevant. If a state law were preempted, it would not be valid, and subsection (b)(2) of the Rule would and could not incorporate those

---

[13] Plaintiffs' half-hearted reference to the major questions doctrine, Mot. at 10 & n.1, should also be rejected, as Plaintiffs have satisfied none of the factors to demonstrate that such "extraordinary circumstances" apply here. *See West Virginia v. Env't Prot. Agency*, 597 U.S. 697, 723-24 (2022); *Mayfield v. United States Dep't of Lab.,* 117 F.4th 611, 616-17 (5th Cir. 2024).

[14] Plaintiffs' citations to the contrary, Mot. at 14 n.2, are inapposite. None of these cases relate to the contents of a report or a CRA's facial, statutory obligations. Instead, these cases relate to disputes about whether a CRA should have known that another entity was submitting fraudulent or false information to it; and in each of these cases, the evidence showed that, in fact, the CRA had "reason to believe" that the third party was, in fact, requesting the report for a permissible purpose, such that the claim failed.

prohibitions into the Rule. *See* CFPB Opp. at 14. This argument thus fails.

And even if the Rule did purport to do what Plaintiffs claim (which it does not), the referenced state laws are not preempted. The FCRA's baseline preemption provision states:

> Except as provided in subsections (b) and (c), this title does not annul, alter, affect, or exempt any person subject to the provisions of this title from complying with the laws of any State with respect to the collection, distribution, or use of any information on consumers or for the prevention or mitigation of identity theft, except to the extent that those laws are inconsistent with any provision of this title, and then only to the extent of the inconsistency.

15 U.S.C. § 1681t(a). While § 1681t(b) and (c) set forth more stringent forms of preemption involving specific sections and subsections of the FCRA, it is the less stringent preemption standard in § 1681t(a) that applies to § 1681b of the FCRA, including § 1681b(g)(1) and (2). Under this standard, the FCRA does not preempt state credit reporting or other laws unless there is a specific inconsistency between the FCRA and the state law. State law is inconsistent for these purposes only where the actor would violate the FCRA by complying with the state statute. *See Davenport v. Farmers Ins. Grp.*, 378 F.3d 839, 843 (8th Cir. 2004); *Aghaeepour v. N. Leasing Sys., Inc.*, 378 F. Supp. 3d 254, 263 (S.D.N.Y. 2019). A state law is not inconsistent with the FCRA merely because it gives consumers more protection than does the federal act. *Credit Data of Arizona, Inc. v. State of Ariz.*, 602 F.2d 195, 198 (9th Cir. 1979).

Thus, a state law that prohibits creditors from considering medical debt on a credit report is not preempted under § 1681t(a). Plaintiffs' preemption claim relies on the argument that § 1681b(g)(2) affirmatively permits creditors to consider masked medical debts, which, as discussed in Part II.A.2, it does not. And even if Plaintiffs were correct, a state law prohibiting consideration of medical debt is not preempted because a creditor's compliance with such a law does not require it to violate the federal Act. Neither does such a law stand as an obstacle to the purposes of Congress in enacting § 1681b(g)(2) of the FCRA, which, above all, was to protect the privacy of

consumers' medical information and prohibit its use in credit underwriting.

### C. Plaintiffs Have Failed to Demonstrate the Additional Requirements for a Preliminary Injunction.[15]

#### 1. Plaintiffs have failed to demonstrate imminent, irreparable harm.

Plaintiffs claim they will suffer irreparable harm if the Court fails to grant the extraordinary relief of preliminarily enjoining the Rule before the case is considered on the merits. Mot. at 15-19. Plaintiffs' burden is high. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (requiring "clear showing" of harm "between the ruling on the preliminary injunction and trial on the merits"); *Tex. Health & Hum. Servs. Comm'n v. United States*, 166 F. Supp. 3d 706, 710 (N.D. Tex. 2016) (harm must be "real, imminent, and significant—not merely speculative or potential.").

Plaintiffs do not meet their burden. *See* CFPB Opp. at 16-19. As an initial matter, Plaintiffs' doomsday assertions are belied by reality: twelve states, including two of the nation's most populous ones, already prohibit the reporting of medical debt, *see supra* n. 3; in addition, the CRAs have previously voluntarily removed huge swaths of medical debt from credit reports. *See* 90 Fed. Reg. at 3333. Both CRAs and creditors have presumably updated their systems to adjust to this reality. Plaintiffs have thus failed to demonstrate "more than de minimis" harm. *Louisiana v. Biden*, 55 F.4th 1017, 1035 (5th Cir. 2022).

With respect to the CRAs specifically, Plaintiff CDIA claims that its CRA members will incur costs in updating their systems and information technology, making irreversible changes to their data, and updating their scoring algorithm if the Rule is not immediately enjoined. Mot. at 15-17. But the CRAs' affidavits fail to set forth specific timelines that demonstrate how the purported costs will be specifically incurred during the pendency of this action. *See* CFPB Opp. at

---

[15] The remaining arguments only are relevant if the merits are not consolidated at this stage.

17. This lack of specificity is especially deficient given that the CRAs have already had to incur costs for tasks that are more complicated and technically challenging than suppressing all medical debt items in reports sent to creditors—they have had to specifically suppress medical debts from twelve states and those under $500. The CRAs fail to specify why a uniform nationwide ban is more costly than instituting state-by-state bans or bans on medical debts under $500. Indeed, Equifax, Experian, and TransUnion all admit there is a simple way to comply with the rule: to "suppress all medical debt information from all consumer reports." ECF 9-4 at ¶ 8 (Equifax); *see also* ECF 9-5 at ¶ 7 (Experian); ECF 9-6 at ¶ 5a (TransUnion). Given this easy solution, the CRAs have failed to identify harm that is "more than de minimis." *Louisiana*, 55 F.4th at 1035.

And even if the CRAs wanted to continue to include medical debt on reports sent to landlords and other non-creditor users, as permitted, the CRAs' arguments that this would be too costly lack credibility. *See* CFPB Opp. at 17-18. For example, TransUnion's assertion that it "cannot easily differentiate between a consumer report that would be used for credit determinations (and therefore cannot include medical debt), and a consumer report that would be used for some other permissible purpose (and therefore could include medical debt)," ECF 9-6, at ¶ 5a, is highly questionable given that the FCRA specifically requires CRAs to "require that prospective users of the information identify themselves, *certify the purposes for which the information is sought*, and certify that the information will be used for no other purpose." 15 U.S.C. § 1681e(a) (emphasis added).

With respect to the potential harm to creditors, Plaintiff Cornerstone asserts that its members will suffer irreparable injury because they must develop new systems, change their underwriting practices, and re-evaluate their risk management practices. Mot. at 18. But Cornerstone fails to cite any competent evidence from a creditor member to substantiate such

purported harm. Instead, it relies on an anonymous declaration, which is insufficient to provide "specific evidence" required to demonstrate harm. *See Louisiana v. Haaland,* No. 2:24-CV-00820, 2025 WL 761743, *5-*7 (W.D. La. Mar. 10, 2025); *see also* CFPB Opp. at 15-16. Indeed, the CFPB has found that the Rule actually *benefits* creditors by leading to increased access to credit such that lenders "would experience an increase in profitable loan volume." 90 Fed. Reg. at 3335.[16]

Plaintiffs thus fail to meet their burden of demonstrating that they will incur immediate, irreparable, and meaningful injury without a preliminary injunction.

### 2.    The balance of harms and the public interest favor injunctive relief.

The government's and public's interest in protecting privacy and preventing unfair use of medical information in credit decisions far outweighs Plaintiffs' speculative assertion of de minimis harms. *See, e.g., Maryland v. King*, 567 U.S. 1301, 1303 (2012) ("Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." (cleaned up)); *see also* CFPB Opp. at 19-20. Plaintiffs' arguments to the contrary simply restate their merits arguments—that the Rule should be vacated because, they say, it was unlawfully promulgated. As set forth above, this not the case. *See supra* Part III.B. Rather, as the CFPB painstakingly documented in promulgating the Rule and the overwhelming comments in favor of the Rule demonstrate, the public interest strongly supports the Rule. *See supra* Part II.

### IV.    CONCLUSION

For the foregoing reasons, Defendants-Intervenors respectfully request that the Court deny Plaintiffs' Motion for Preliminary Injunction and the Joint Motion for Entry of Consent Judgment.

---

[16] Plaintiffs' claim that credit scoring under the Rule will be less predictive, Mot. at 18-19, is not supported by specific evidence of harm and, further, is refuted by the CFPB's substantial analysis. *See supra* Part II.

Dated: May 22, 2025

Respectfully submitted:

*/s/ Jennifer S. Wagner*
Jennifer S. Wagner (admitted *pro hac vice*)
NY Reg. No. 6083463
Chi Chi Wu (admitted *pro hac vice*)
MA Bar No. 560178
National Consumer Law Center
7 Winthrop Square
Boston, MA 02110
Ph: 617-542-8010
jwagner@nclc.org
cwu@nclc.org

Carla Sanchez-Adams
Texas Bar No. 24070552
National Consumer Law Center
1001 Connecticut Avenue, NW
Suite 510
Washington, DC, 20036
Ph: 202-452-6252
Fax: 202-296-4062
csanchezadams@nclc.org

*Counsel for Defendant-Intervenors*


## CERTIFICATE OF SERVICE

I certify that on May 22, 2025, the foregoing document was filed on the Court's CM/ECF

system which sent notification of such filing to all counsel of record.

*/s/ Jennifer S. Wagner*