UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| CORNERSTONE CREDIT UNION LEAGUE and CONSUMER DATA INDUSTRY ASSOCIATION, <br><br> *Plaintiffs*, <br><br> v. <br><br> CONSUMER FINANCIAL PROTECTION BUREAU and RUSSELL VOUGHT in his official capacity as Acting Director of the CFPB, <br><br> *Defendants.* | Civil Action No. 4:25-cv-00016-SDJ |

**REPLY IN SUPPORT OF JOINT MOTION TO
APPROVE CONSENT JUDGMENT**

In their joint motion seeking entry of a consent order, Defendants and Plaintiffs explained that the Bureau's rule, "Prohibition on Creditors and Consumer Reporting Agencies Concerning Medical Information" (Regulation V), 90 Fed. Reg. 3276 (Jan. 14, 2025) (Rule), should be vacated because each of the Rule's parts violates the Fair Credit Reporting Act (FCRA) and is therefore contrary to law as alleged in Counts I, II, and III of Plaintiffs' Complaint. Intervenors attempt to salvage the Rule by advancing an interpretation of FCRA that is irreconcilable with the statute's text. But FCRA is clear: Consumer reporting agencies (CRAs) are permitted to furnish, and creditors with a permissible purpose are permitted to obtain and use, certain medical information that adheres to the protections FCRA established to mask the nature of medical services consumers have received (and, by extension, the nature of the health concerns they face). The Rule upends the statute's careful balancing of consumers' privacy interests with the benefits of well-informed credit underwriting. But a regulation implementing a statute cannot lawfully contradict that statute, and the Rule cannot prohibit activities that FCRA authorizes. Because each part of the Rule is contrary to law, vacatur is the appropriate remedy.

I.  **This Court is empowered to evaluate the Rule's legality and vacate it.**

Intervenor-Defendants begin with an inaccurate premise: The pending joint motion does not seek to repeal the Rule through agency action, as they assert, *see* ECF No. 38 at 8. It seeks a judgment from this Court, following merits consideration of the pending motions, relevant docket entries, and applicable law, that the Rule violates the Administrative Procedure Act (APA) because it is not in accordance with FCRA. *See* 5 U.S.C. § 706(2)(A). There can be no doubt that a reviewing court has the authority to "hold unlawful and set aside agency action" that it finds is "not in accordance with law[.]" *Id.* at § 706(2). The APA provides that a reviewing court "*shall*" do so. *Id.* § 706 (emphasis added). And when an agency action is held unlawful, in this Circuit,

"[t]he default rule is that vacatur is the appropriate remedy." *Data Mktg. P'ship, LP v. United States Dep't of Lab.*, 45 F.4th 846, 859 (5th Cir. 2022).

Though Intervenor-Defendants attempt to suggest otherwise, *see* ECF No. 38 at 8-9, courts have held repeatedly that adopting a consent decree that vacates a rule is a judicial act that is not subject to the APA's notice and comment requirements. *See Turtle Island Restoration Network v. U.S. Dep't of Com.*, 672 F.3d 1160, 1168–69 (9th Cir. 2012) (rejecting argument that a consent decree vacating a rule and restoring prior regulation violates the APA's notice and comment requirements); *Home Builders Associations of N. California v. Norton*, 293 F. Supp. 2d 1, 3–5 (D.D.C. 2002) (adopting consent decree vacating portions of regulation and rejecting argument that consent decree circumvented APA's notice and comment requirements); *Nat'l Ass'ns of Home Builders v. Evans*, 2002 WL 1205743, at *2–3 (D.D.C. Apr. 30, 2002) (same); *cf. Sierra Club v. EPA*, 705 F.3d 458, 463–64 (D.C. Cir. 2013) (vacating portions of regulation after accepting agency concession that they were flawed). Although some courts have concluded that an agency's consent *alone* is not sufficient to vacate a rule, *see Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 557 (D.C. Cir. 2015), here the agency has done more than merely consent, it has recognized the fundamental legal errors underlying its rule. And an agency's recognition of its legal error does not affect either a court's ability and responsibility to assess the legality of a rule or a court's corresponding authority to invalidate an unlawful rule under the APA.[1]

## II.     The Rule is contrary to law.

Intervenor-Defendants recite the Rule's procedural history at length and argue that it is wise policy. *See* ECF No. 38 at 1-8. But the relevant issue here is whether the Rule contravenes

---

[1] Should the Court disagree that entry of a consent judgment is an appropriate action, Defendants ask that it construe the pending motion as a motion for summary judgment and enter summary judgment vacating the Rule.

2

FCRA and therefore violates the APA. Each component of the Rule does just that.[2] As a result, the Rule should be vacated.

### a. The Rule's changes to 12 C.F.R. § 1022.30 contradict FCRA.

FCRA prohibits creditors from obtaining and using medical information unless *either* that use is authorized by regulation or order *or* the medical information is "treated in the manner required under section 1681c(a)(6)." It says:

> Except as permitted pursuant to paragraph (3)(C) or regulations prescribed under paragraph (5)(A), a creditor shall not obtain or use medical information (other than medical information treated in the manner required under section 1681c(a)(6) of this title) pertaining to a consumer in connection with any determination of the consumer's eligibility, or continued eligibility, for credit.

15 U.S.C. § 1681b(g)(2). The Rule's changes to § 1022.30 directly contradict this statutory provision by making it unlawful in most cases for creditors to obtain or use "medical information treated in the manner required under section 1681c(a)(6)."

To defend this striking result, Intervenor-Defendants are left to assert that, notwithstanding the text, the statute's reference to "medical information treated in the manner required under section 1681c(a)(6)" is a limitation on any regulatory exception that would permit creditors to obtain and use medical information. *See* ECF No. 38 at 15. But it makes little sense to read the parenthetical, which is located in the middle of text defining what a creditor may do, as a limitation on what agencies may do via regulatory authority. Indeed, Congress knew how to limit agencies' exercise of their authority; it just chose to do so differently than Intervenor-

---

[2] Plaintiffs and Defendants have moved for entry of a consent judgment with respect to Counts I, II, and III, because each count correctly alleges that the Rule's changes to 12 C.F.R. §§ 1022.30, 1022.38(b)(1), and 1022.38(b)(2) respectively are contrary to law and must be vacated. Should the Court disagree with respect to any claim, a severability analysis would be warranted and Defendants would request the opportunity to submit supplemental briefing concerning the impact of the Court's decision on the Rule.

3

Defendants prefer. In § 1681b(g)(5)(A), which defines the Bureau's power to promulgate regulations implementing § 1681b(g)(2), Congress mandated that any such regulations must be "consistent with the intent of paragraph (2) to restrict the use of medical information for inappropriate purposes." 15 U.S.C. § 1681b(g)(5)(A). This rulemaking provision demonstrates two things: First, Congress knew how and where to define restrictions on the agency's regulatory authority relating to the medical information limitation. Second, it rebuts Intervenor-Defendants' view that absent regulatory permission, § 1681b(g)(2) categorically forbids creditors from using or obtaining *any* medical information, as Congress made clear that separate and apart from whatever regulatory exceptions were established, the intent of § 1681b(g)(2) was to "restrict" the use of medical information only "for *inappropriate* purposes," *id*. (emphasis added).

Intervenor-Defendants protest that understanding the parenthetical to limit the clause it is a part of, rather than a clause several paragraphs removed, cannot be what Congress intended. For example, they say, allowing creditors to consider restricted or coded medical information would permit creditors to deny credit based on a consumer's cancer diagnosis as long as a medical furnisher's name and contact information is not disclosed. *See* ECF No. 38 at 16. That is mistaken. Section 1681b(g)(2) bars creditors from obtaining or using medical information "*other than* medical information treated in the manner required under section 1681c(a)(6)…[.]" 15 U.S.C. § 1681b(g)(2) (emphasis added). The "manner required" under section § 1681c(a)(6) provides that medical information be "restricted or reported using codes that do not identify, or provide information sufficient to infer, the specific provider or the nature of [medical] services, products, or devices to a person other than the consumer[.]" *Id.* § 1681c(a)(6). This protects far more than the name or contact information of a medical information furnisher. Instead, the

4

language prevents disclosure of any information that would identify, even by inference, the nature of a consumer's medical treatment or, by implication, the consumer's medical condition.

Intervenor-Defendants also assert, again incorrectly, that the Rule's changes to § 1022.30 must be permissible because they repealed a prior regulatory exception. *See* ECF No. 38 at 12-14. This misses the point. The problem with the Rule's amendment of § 1022.30 is that it renders that provision incompatible with FCRA and therefore contrary to law. The Rule accomplished this unlawful result in two ways. First, it repealed key portions of § 1022.30(d), which created the financial information exception that largely tracks § 1681b(g)(2)'s authorization of creditors with a permissible purpose to obtain and use medical information that is properly restricted or coded. Second, the Rule left intact § 1022.30(b), which generally prohibits creditors from obtaining or using medical information in connection with a credit transaction. The net effect: Regulation V prohibits creditors from obtaining or using restricted or coded medical information even though FCRA authorizes it.

That Congress intended creditors to be able to obtain and use coded medical information in connection with a credit transaction is clear on the face of the text, but the broader statutory context provides further confirmation. FCRA's provision addressing CRAs' furnishing of medical information in connection with a credit transaction, contained in § 1681b(g)(1), parallels the creditor provision in § 1681b(g)(2) by permitting CRAs to furnish certain medical information if it is restricted or reported using codes consistent with § 1681c(a)(6). The CRA provision does this in two places: first, it specifies that the general limitation on furnishing medical information applies "*other than*" to medical contact information "treated in the manner required under section 1681c(a)(6)"—just like the creditor provision. 15 U.S.C. § 1681b(g)(1) (emphasis added). Next, the CRA provision carves out a second set of medical information from

5

the general limitation: that pertaining "solely to transactions, accounts, or balances relating to debts arising from the receipt of medical [treatment]" where the information "is restricted or reported using codes" that, just as in § 1681c(a)(6), "do not identify" or "provide information sufficient to infer" the specific provider or nature of medical treatment the consumer has received. 15 U.S.C. § 1681b(g)(1)(C). There is no reason to think Congress would have authorized CRAs to furnish restricted or coded medical information "in connection with" a credit transaction in § 1681b(g)(1), but then in § 1681b(g)(2) foreclosed the creditors conducting those transactions from obtaining or using the information the CRAs are authorized to furnish. Rather than conflicting, together, § 1681b(g)(1) and (g)(2) permit CRAs and creditors to handle certain medical information that is "restricted or reported using codes" that obscure the nature and provider of medical treatment consistent with § 1681c(a)(6). Contrary to the statute, the Rule's changes to § 1022.30 prohibit creditors from obtaining or using even this coded information, subject only to narrow use-based exceptions. As a result, these changes must be vacated.

      **b. The Rule's new 12 C.F.R. § 1022.38(b)(1) contradicts FCRA.**

  The Rule's newly imposed limitation on the ability of CRAs to furnish medical information to creditors in § 1022.38(b)(1) suffers from the same defects as the Rule's restrictions on creditors' ability to use and obtain that information. To begin, § 1022.38(b)(1) is expressly dependent on the Rule's changes to § 1022.30. It says that CRAs can't furnish medical information unless the CRA "has reason to believe the creditor intends to use the medical debt information in a manner not prohibited by § 1022.30[.]" 90 Fed. Reg. at 3374 (promulgating 12 C.F.R. § 1022.38(b)(1)). Because the Rule's amendments to § 1022.30 are invalid, so too is

6

§ 1022.38(b)(1).[3] Not surprisingly then, Intervenor-Defendants' defense of § 1022.38(b)(1) depends on the same flawed premise as their defense of the changes to § 1022.30: that Congress's careful delineation of the type of coded medical information that CRAs can furnish and that creditors can obtain and use in 15 U.S.C. § 1681b(g)(1) and (2) are limitations on the Bureau's regulatory authority under § 1681b(g)(5). But, as explained above, that theory cannot be squared with FCRA's plain text.

If anything, the argument that CRAs can only furnish medical information to the extent of a regulatory exception under § 1681b(g)(5) is even more inconsistent with the statute than the parallel creditor argument addressed above. Recall that two different provisions of § 1681b(g)(1) permit the furnishing of coded medical information. Section 1681b(g)(1) creates a general rule that in the credit context CRAs cannot furnish medical information "*other than* medical contact information treated in the manner required under section 1681c(a)(6)." (emphasis added). Then—as one of the exceptions to the rule that "other than" coded medical contact information, medical information cannot be furnished—§ 1681b(g)(1)(C) provides that CRAs can furnish medical information that "pertains solely to transactions, accounts, or balances relating to debts arising from the receipt of medical services, products, or devices" as long as the information (other than account status or amounts) is "restricted or reported using codes that do not identify, or do not provide information sufficient to infer, the specific provider or the nature" of the medical services, products, or devises, "as provided in [FCRA's] section 1681c(a)(6)[.]" 15 U.S.C. § 1681b(g)(1)(C). Notably, neither of these provisions specifying what CRAs may do

---

[3] The Rule's preamble concedes this, noting that if § 1022.30 is found invalid, § 1022.38(b)(1) would not take effect "because it relies on the amendments to § 1022.30[.]" 90 Fed. Reg. at 3351.

7

with medical information depends on or even refers to the Bureau's regulatory authority with respect to when creditors can obtain and use medical information.

Intervenor-Defendants err once again when they suggest that reading § 1681b(g)(1) according to its plain text would "permit CRAs to furnish masked medical debt information in violation of other provisions of the FCRA, such as the permissible purpose restrictions." ECF No. 38 at 19. Not so: FCRA's permissible purpose provisions authorize CRAs to provide a report to a person the CRA "has reason to believe [] intends to use the information in connection with a credit transaction[.]" 15 U.S.C. § 1681b(a)(3). Because FCRA's creditor provision allows creditors to obtain and use properly coded medical information in connection with a credit transaction under § 1681b(g)(2), CRAs have reason to believe creditors intend to use that information in connection with a credit transaction under § 1681b(a)(3). Congress's language in the CRA provision at § 1681b(g)(1) is therefore entirely consistent with the permissible purpose requirements at § 1681b(a)(3), because it allows CRAs to furnish properly coded medical information that FCRA authorizes creditors to obtain and use under the permissible purpose of conducting a credit transaction.

Intervenor-Defendants' interpretation of § 1681b(g)(1) cannot be squared with the broader statutory context, either. When Congress wanted to bar CRAs from including medical information in consumer reports, it did so unambiguously: Congress explicitly prohibited CRAs from furnishing certain medical information relating to veterans from certain consumer reports in § 1681c. Under § 1681c(a)(7) and (8), national consumer reporting agencies[4] are prohibited from creating any consumer report containing "*any* information related to a veteran's medical debt"

---

[4] Specifically, these provisions apply to consumer reporting agencies that compile and maintain files on consumers on a nationwide basis, as defined in 15 U.S.C. § 1681a(p).

older than one year, § 1681c(a)(7), or "*any* information related to a fully paid or settled veteran's medical debt" that had been in a negative status, § 1681c(a)(8).[5] These provisions show that, while it created categorical bans on some medical information for veterans, Congress allowed CRAs to report certain medical information for non-veteran consumers if it is properly restricted or coded.

Nonetheless, the Rule's § 1022.38(b)(1) forecloses CRAs from providing any medical information to creditors unless the creditor's intended use for the information meets one of a small handful of use-based exceptions, such as determining whether a power of attorney is needed due to a consumer's medical condition. *See, e.g.*, 12 C.F.R. 1022.30(e)(1)(i). That dramatic narrowing of when a CRA may lawfully furnish medical information destroys the careful balance Congress struck in the statute, which allows CRAs to furnish certain medical information to creditors so long as that information is properly restricted or coded to protect consumers from disclosure of their medical treatment and, by implication, their medical condition. Because § 1022.38(b)(1) of the Rule forecloses what FCRA permits, it must be vacated.

### c. The Rule's 12 C.F.R. § 1022.38(b)(2) contradicts FCRA.

The Rule contradicts FCRA yet again in 12 C.F.R. § 1022.38(b)(2) because it prohibits CRAs from furnishing medical debt information to creditors if a state law purports to prohibit a creditor from obtaining or using medical debt information. *See* 90 Fed. Reg. at 3373 (promulgating 12 C.F.R. § 1022.38(b)(2)). But as explained above, FCRA permits creditors to

---

[5] Because a "veteran's medical debt" includes "a medical collection debt of a veteran" incurred "for payment for health care[,]" 15 U.S.C. § 1681a(z), it falls within the definition of "medical information," which includes "information or data…that relates to…the payment for the provision of health care to an individual," 15 U.S.C. § 1681a(i).

obtain and use medical information if it is properly restricted or coded, and permits CRAs to furnish certain medical information to creditors if it is restricted or coded in the same way. Specifically, FCRA authorizes the furnishing and use of this information "in connection with" a credit transaction, *see* 15 U.S.C. § 1681b(g)(1), (2), which FCRA also specifies is one of the enumerated permissible purposes for which a CRA may furnish a consumer report, *id.* § 1681b(a)(3)(A). And under FCRA's permissible purpose provision, a CRA is authorized to furnish "a consumer report" if it has "reason to believe" a user has a permissible purpose. *Id.* § 1681b(a)(3). To be sure, the contents of consumer reports must conform to the restrictions FCRA imposes, *see, e.g.*, 15 U.S.C. § 1681c, and users must comply with FCRA's restrictions on obtaining and using consumer reports, *see, e.g., id.* § 1681b(f), (g)(2). But nothing in FCRA's permissible purpose provision requires CRAs to condition their permissible purpose analysis on state law requirements singling out particular types of data. Moreover, Congress only authorized the Bureau to prescribe regulations to "carry out the purposes and objectives" of—and "prevent evasions" or "facilitate compliance" with—*FCRA*, not with state laws concerning consumer reporting. 15 U.S.C. § 1681s(e)(1) (regulations may carry out the purposes and objectives of "this subchapter" and prevent evasions "thereof"). Accordingly, the Bureau cannot seek to enforce more stringent state laws under rulemaking authority that Congress limited to preventing evasion of, or facilitate compliance with, FCRA. As a result, the Rule's § 1022.38(b)(2) exceeded the Bureau's regulatory authority and must be vacated.

## CONCLUSION

For the forgoing reasons, Defendants respectfully request that this Court vacate the Rule.

10

| | |
|---|---|
| Date: May 30, 2025 | Respectfully Submitted, |

Mark Paoletta
  *Chief Legal Officer*
Daniel Shapiro
  *Deputy Chief Legal Officer*
Victoria Dorfman
  *Senior Legal Advisor*
Christopher Deal
  *Assistant General Counsel*

<u>/s/ Andrea J. Matthews</u>
Andrea J. Matthews (M.A. Bar No. 694538)
  *Pro hac vice*
  *Senior Counsel*
Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552
(202) 407-2324
Andrea.Matthews@cfpb.gov

*Counsel for Defendants Consumer Financial Protection Bureau and Russell Vought*

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of this Reply was filed electronically through the Court's ECF system.

Date: May 30, 2025                                                                       */s/ Andrea J. Matthews*