IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| CORNERSTONE CREDIT UNION LEAGUE and CONSUMER DATA INDUSTRY ASSOCIATION,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>CONSUMER FINANCIAL PROTECTION BUREAU and RUSSELL VOUGHT in his official capacity as Acting Director of the CFPB,<br><br>　　　　Defendants. | No. 4:25-cv-00016-SDJ |

**DEFENDANT-INTERVENORS' SUPPLEMENTAL BRIEF IN OPPOSITION TO
<u>MOTION FOR CONSENT JUDGMENT</u>**

Defendant-Intervenors submit this memorandum to supplement the record on three issues: (1) the standard for entering a consent judgment over objection by an intervenor; (2) the appropriate remedy, in the event that the Court determines that any of the arguments advanced by Plaintiffs and Defendant are correct; and (3) the history of the Fair Credit Reporting Act.

1. **A motion for consent judgment by a federal agency must be approved by all parties whose rights or remedies are impacted; otherwise, a ruling on the merits is necessary.**

Where a settlement interferes with the rights or remedies of a third party—including an intervenor—it cannot be entered over that third party's objection. Rather, the law "forbid[s] entry of a 'consent decree' insofar as it adversely affects the legal rights of an objecting party, whether that party is a plaintiff or defendant," including an intervenor defendant. *United States v. City of Hialeah*, 140 F.3d 968, 978–79 (11th Cir. 1998); *see also White v. State of Ala.,* 74 F.3d 1058, 1073-74 & n.51 (11th Cir. 1996); *United States v. City of Miami, Fla.*, 664 F.2d 435, 447 (5th Cir. 1981) ("A party potentially prejudiced by a decree has a right to a judicial determination of the merits of his objection."); *id.* at 440 (explaining that "in multiparty litigation, two parties may resolve all of the issues that do not affect a third party, ask the court to include only this settlement in a consent decree, and submit to the court for adjudication the remaining issues, disputed between them and the third party."). "A court's approval of a consent decree between some of the parties . . . cannot dispose of the valid claims of nonconsenting intervenors; if properly raised, these claims remain and may be litigated by the intervenor." *Loc. No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 529 (1986); *see also Texas v. New Mexico,* 602 U.S. 943, 953 (2024) (refusing to approve consent decree); *City of Miami,* 664 F.2d 435 (same); *City of Hialeah,* 140 F.3d at 981 (11th Cir.1998). Otherwise, "[t]he proposed consent decree . . . would have the effect of cutting [the intervenor] off from a remedy to which" they allege they are

1

entitled—namely, dismissal of this litigation with prejudice. *Texas v. New Mexico*, 602 U.S. at 963 (discussing the rights of the United States as an intervenor) (cleaned up).

In this case, Intervenors have been granted the right to intervene as Defendants and present all valid defenses to the claims set forth in this case. *See* Order, ECF No. 36 at 2. To that end, Intervenors have filed an Answer to the Complaint asserting their defenses to this litigation. ECF No. 26-11. If the so-called consent decree is entered without consideration of the merits, it will fully dispose of Intervenor-Defendants' defenses to this litigation and, accordingly, their ability to defend the Medical Debt Rule and their right to benefit from the Rule's provisions. As a result, the consent decree cannot be entered, and Intervenor's defenses must be decided on the merits. *See City of Miami, Fla.*, 664 F.2d at 447; *City of Hialeah,* 140 F.3d at 981.

Further, even if Intervenors did *not* object to the proposal, the Court would be required to ensure that the consent decree does not violate the law and is instead "a tailored remedial response to illegality." *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 999 F.2d 831, 846-47 (5th Cir. 1993) (citing *City of Miami,* 664 F.2d at 440-41, 451, and rejecting consent decree where no illegality was found); *accord* ECF No. 44 at 1 (CFPB recognizing merits must be considered). An agency action—including entering into a settlement—is reviewable on the merits if it is alleged that the action is inconsistent with the agency's legal authority or otherwise not allowed by law or regulation. *See, e.g.*, *United States v. Carpenter*, 526 F.3d 1237, 1241 (9th Cir. 2008); *Exec. Bus. Media, Inc. v. U.S. Dep't of Def.*, 3 F.3d 759, 761 (4th Cir. 1993). Here, as Intervenors have explained, the CFPB's decision to seek entry of a consent judgment to repeal the Medical Debt Rule is contrary to its responsibilities to engage in notice-and-comment rulemaking under the Administrative Procedures Act and its delegated authority under FCRA, 15 U.S.C. §§ 1681b(g)(5), 1681s(e). The CFPB's about-face both fails to follow the proscribed procedures set

forth in the statutes and is arbitrary and capricious because it is unsupported by adequate reasoning. Rather, the Medical Debt Rule was properly promulgated pursuant to Congressionally delegated authority; the prior CFPB abided by all the legal and procedural requirements; and the Rule is not contrary to law. As a result, the Rule is lawful, the proposed "consent" decree is not, and it thus cannot be approved. *See id.*; 5 U.S.C. § 706(2).

### 2. Full vacatur of the Rule is not the proper remedy.

The Medical Debt Rule contains several provisions, many of which are both unaddressed and unaffected by the arguments raised in the pending motion for consent judgment. As a result, even if the Court were to agree with the arguments presented by the Plaintiffs and Defendants, the Rule could not be vacated as a whole.

First, the Court does not have the authority to vacate any portions of the Rule that are not unlawful. *See* 5 U.S.C. § 706. Instead, the Fifth Circuit's severability analysis applies:

> In the context of agency rulemaking, a two-prong inquiry guides our severability analysis: Whether the offending portions of a regulation are severable depends upon the intent of the agency *and* upon whether the remainder of the regulation could function sensibly without the stricken provisions. We adhere to the text of a severability clause in the absence of extraordinary circumstances.

*Texas v. United States*, 126 F.4th 392, 419 (5th Cir. 2025) (cleaned up). Here, the Rule's severability clause resolves some, but not all of the issues. It sets forth:

> The CFPB intends that, if the consumer reporting agency prohibition on furnishing medical debt information finalized in § 1022.38 (or any provision or application of that section) is stayed or determined to be invalid, the amendments to § 1022.30 are severable and shall continue in effect. The CFPB also intends that if the amendments to § 1022.30 (or any provisions or applications of those amendments) were stayed or determined to be invalid, § 1022.38(b)(1) would not take (or continue in) effect, because it relies on the amendments to § 1022.30, but § 1022.38(b)(2) is severable and shall continue in effect. Furthermore, if the result of a stay or judicial determination is that creditors are generally able to obtain or use medical information in connection with determinations of consumers' eligibility, or continued eligibility, for credit, the CFPB intends the prior version of § 1022.30(d) to continue in effect.

3

90 Fed. Reg. at 3351.

As an initial matter, there are several provisions that Plaintiffs and Defendants do not challenge. These include: a new definition of medical debt contained in 12 C.F.R. § 1022.3(j); a new specific exception to the prohibition of consideration of medical information that is unrelated to consumer reports set forth at § 1022.30(e)(1)(x); and new examples of permissible consideration of medical information set forth at § 1022.30(e)(6) and (7). These provisions are not addressed in the severability provision. However, because they would function sensibly even if other provisions were struck down, they should remain in place.

Second, as set out by the CFPB in its severability analysis, even if the Court finds that (g)(2) prohibits the Rule's repeal of the portions of § 1022.30(d) that relate to information contained in consumer reports, the portion of the Rule contained in § 1022.38(b)(2) would not be unlawful, because all it does is require consumer reporting agencies to not furnish reports when doing so would be inconsistent with state or federal law.[1] The coding provision in (g)(2) (which relates to creditors) has no bearing on this provision. Nor does the coding provision in (g)(1)(C), unless the Court were to reach the untenable conclusion that this proviso is an affirmative grant of authority that overrides all other provisions of the FCRA (including not just the permissible use provision but also provisions relating to debts older than seven years old, inaccurate debts, etc.), all other provisions of federal law (such as the Equal Credit Opportunity Act), and all state laws.

But while the first two sentences of the Rule's severability analysis apply, no party argues that creditors are "generally able to obtain or use medical information in connection with" credit

---

[1] If the repeal of § 1022.30(d) was unlawful, in the manner set forth by Plaintiffs, § 1022.38(b)(1) would not take effect pursuant to the CFPB's severability analysis. *See* 90 Fed. Reg. at 3351. Intervenors maintain, however, that no portion of the Rule is unlawful.

4

determinations as set forth in the final sentence. Instead, Plaintiffs argue that creditors can obtain and use *coded* medical information *on consumer reports* pursuant to § 1681c(a)(6). But that does not end the inquiry, because when the CFPB repealed the broad regulatory exception set forth in 12 C.F.R. § 1022.30(d), it repealed provisions subject to medical coding requirements *as well as* provisions that were *not* subject to such requirements because they related to medical information that was not included in credit reports. The pending motions assert that the CFPB's repeal of 12 C.F.R. § 1022.30(d), while leaving in place a blanket prohibition on consideration of medical information, 12 C.F.R. § 1022.30(b), is contrary to the parenthetical in 15 U.S.C. § 1681b(g)(2). The motions claim that this parenthetical allows creditors to obtain and use "medical information that is treated in the manner required under section 1681c(a)(6)" under all circumstances. *See* ECF No. 31 at 4 ¶ 7. Section 1681c(a)(6), however, only applies to information *contained in consumer reports*, specifically, "the name, address, and telephone number of any medical information furnisher" contained in such reports. While the repeal of 12 C.F.R. § 1022.30(d) did have the effect of prohibiting the consideration of such information by prohibiting consideration of medical debts, *see* 90 Fed. Reg. at 3285-3300; it also had the express and considered effect of prohibiting consideration of a variety of other medical information that is *not* contained in consumer reports and thus not subject to the coding provisions of 15 U.S.C. § 1681c(a)(6), such as medical information related to expenses, assets, collateral, income, benefits, and the purpose of the loan, *see* 90 Fed. Reg. at 3300-02. This second category of information is not impacted by the arguments in the pending motions. As a result, this portion of the Rule is valid and lawful, even accepting Plaintiff's and Defendant's arguments as correct. However, the repeal of the challenged portions of § 1022.30(d) does not appear to be severable from the repeal of the unchallenged and presumptively lawful portions. Therefore, even if portions of the repeal are found to be invalid

(which Intervenors assert would be improper), the Court would be required to determine the proper remedy in this unusual circumstance.

The most appropriate remedy here for portions of the Rule that are unlawful (and those lawful provisions that are not severable from unlawful provisions) would be remand to the agency to correct the defects without vacating the Rule. Remand to the agency without vacatur is appropriate under the following conditions: "*First*, there must be a serious possibility that the agency will be able to correct the rule's defects on remand, and, *second*, when vacating the challenged action would produce disruptive consequences." *Texas v. United States*, 126 F.4th 392, 418 (5th Cir. 2025) (cleaned up); *see also Airlines for Am. v. Dep't of Transportation,* 127 F.4th 563, 582 (5th Cir. 2025) ("Vacatur is often the appropriate remedy for unlawful agency action. But it is not always required. Because we are leaving the stay of the Rule in place, we see no need to vacate it at this time." (internal citations omitted)). Further, requiring an agency to engage in limited rulemaking can be appropriate. *North Carolina v. E.P.A.*, 550 F.3d 1176 (D.C. Cir. 2008).

Here, remand without vacatur is the more appropriate option. As to the first condition, the CFPB—which now seeks to vacate the Rule through this litigation—seems committed to its new interpretation of the law that squares with Plaintiffs' interpretation and is thus well-situated to implement these legal requirements through an appropriate rulemaking process. This could be easily accomplished by simply adding the statutory parenthetical into 12 C.F.R. § 1022.30(b), which otherwise tracks the statutory language of 15 U.S.C. 1681g(b)(2).[2] As to the second condition, simply reinstating the prior regulation through vacatur of the Rule would reinstate a regulation that is unlawful and no longer meets the statutory requirements for the rulemaking, 15

---

[2] The 2005 banking regulators' adoption of the regulation without the parenthetical further confirms that the regulators understood that the parenthetical was a technical, and not substantive, provision.

U.S.C. § 1681g(b)(5), as found by the agency through extensive consideration of studies, reports, and stakeholder engagement, and outlined in the preamble to the Rule. Moreover, vacatur would reinstate regulatory requirements that were properly repealed through the Rule and not subject to the legal challenges before this Court, as set forth above. Thus, the least disruptive and most appropriate course would be remand to the agency to promulgate a new regulation that is supported by evidence, reasoning, and law, and thus compliant with the APA.

Finally, to the extent that Plaintiffs seek to permanently enjoin the Rule, the remedy must be tailored to fit the purported injury. *See Texas*, 126 F.4th at 420-21. Here, Plaintiffs assert that they are injured by the Rule. Intervenors contest that they have not demonstrated any such injury. *See* ECF No. 38 at 23-24. But, to the extent that the Court finds that Plaintiffs have met their burden, the Rule should be enjoined solely as to them. *See Texas*, 126 F.4th at 420-21.

**3. The FACTA increased FCRA's consumer protections for medical information.**

In their reply brief and at oral argument, Plaintiffs repeatedly insisted that the FACTA narrowed protections for consumer medical information from the preexisting terms of FCRA. This incorrect. Before the FACTA's enactment in 2003, the FCRA provided no protections for medical *debt*. While the FCRA did have broad prohibitions on disclosure of "medical information," this term was extremely narrowly defined to include only "information or records obtained, with the consent of the individual to whom it relates, from licensed physicians or medical practitioners, hospitals, clinics, or other medical or medically related facilities" 15 U.S.C. § 1681a(i) (1996). As a result, the prohibition only covered medical information obtained (a) **with consumer consent** and (b) **from medical providers**. Thus, creditors were permitted to freely obtain and use, and consumer reporting agencies were permitted to freely disclose, medical information that had been obtained either without consent from the consumer or from an entity that was not the original

7

provider. The vast majority of medical debts appearing on consumer reports are furnished to consumer reporting agencies by debt collectors and all without express consumer consent. 90 Fed. Reg. at 3298. Therefore, medical debt was *not* included in the definition of medical information and not subject to FCRA's prohibition on medical information disclosure prior to FACTA.

In 2003, Congress sought to rectify this by dramatically *expanding* the definition of "medical information" as follows:

> The term "medical information"--
> **(1)** means information or data, whether oral or recorded, in any form or medium, created by or derived from a health care provider or the consumer, that relates to--
> **(A)** the past, present, or future physical, mental, or behavioral health or condition of an individual;
> **(B)** the provision of health care to an individual; or
> **(C)** *the payment for the provision of health care to an individual*

15 U.S.C.A. § 1681a(i) (2003) (emphasis added). This definition now includes, *inter alia*, medical debt. When Congress expanded the definition, it did, however, recognize that there could be a need for exceptions to this new, extremely broad definition. To address that need, it amended the initial pre-FACTA blanket prohibition to allow for certain exceptions that might be necessary, in light of the much broader set of information covered. *See* 15 U.S.C. § 1681b(g)(2), (5); H.R. Rep. 108-263, at 53 (setting forth examples of the "limited circumstances" in which an exception should be provided, which track the specific exceptions in 12 C.F.R. § 1022.30(e)). And since the new FACTA provision now allowed exceptions, Congress also created provisions that further protected consumers when their medical information was obtained, used, or disclosed pursuant to these exceptions. *See* 15 U.S.C. § 1681c(a)(6).

In short, Plaintiffs' recitation of the statutory history and purpose of the statute is incorrect.

Dated: June 16, 2025

8

Respectfully submitted:

/s/ Jennifer S. Wagner
Jennifer S. Wagner (admitted *pro hac vice*)
NY Reg. No. 6083463
Chi Chi Wu (admitted *pro hac vice*)
MA Bar No. 560178
National Consumer Law Center
7 Winthrop Square
Boston, MA 02110
Ph: 617-542-8010
jwagner@nclc.org
cwu@nclc.org

Carla Sanchez-Adams
Texas Bar No. 24070552
National Consumer Law Center
1001 Connecticut Avenue, NW
Suite 510
Washington, DC, 20036
Ph: 202-452-6252
Fax: 202-296-4062
csanchezadams@nclc.org
*Counsel for Defendant-Intervenors*

9

## **CERTIFICATE OF SERVICE**

I certify that on June 16, 2025, the foregoing document was filed on the Court's CM/ECF system which sent notification of such filing to all counsel of record.

*/s/ Jennifer S. Wagner*

10