**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| CORNERSTONE CREDIT UNION LEAGUE and CONSUMER DATA INDUSTRY ASSOCIATION, | |
| *Plaintiffs*, | |
| v. | **Civil Action No. 4:25-cv-00016-SDJ** |
| CONSUMER FINANCIAL PROTECTION BUREAU and RUSSELL VOUGHT in his official capacity as Acting Director of the CFPB, | |
| *Defendants.* | |

**PLAINTIFFS' AND DEFENDANTS' JOINT SUPPLEMENTAL RESPONSE IN SUPPORT OF CONSENT JUDGMENT OR SUMMARY JUDGMENT**

Intervenors' supplemental brief offers a smattering of new arguments, but none changes the bottom line—the entire Medical Debt Rule is unlawful, and the Court must vacate it in full.

## I.    The Court Can Enter the Consent Judgment Over Intervenors' Objections.

As Plaintiffs and Defendants emphasized at the June 11 hearing, the Court has two paths to vacatur: it can (i) enter the proposed consent judgment or (ii) enter summary judgment in favor of Plaintiffs.[1]  Intervenors argue (at 1) that they can stymie the consent judgment simply by not consenting.  But that contradicts governing caselaw.  "[W]hile an intervenor is entitled to present evidence and have its objections heard at [a] hearing[] on whether to approve a consent decree, *it does not* have power to block the decree merely by withholding its consent."  *Loc. No. 93*, *Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 529 (1986) (emphasis added).

Intervenors protest (at 2) that a consent judgment cannot extinguish their "right to benefit from the [Medical Debt] Rule's provisions."  But that misapprehends the meaning of a "legal right[]" in this context.  *United States v. City of Hialeah*, 140 F.3d 968, 975 (11th Cir. 1998).  A settlement cannot coercively dispose of an intervenors' "*claims*," i.e., a legal right or entitlement to some sort of remedy, *Texas v. New Mexico*, 602 U.S. 943, 953–94 (2024) (emphasis added), such as a party's "contractual rights," *United States v. City of Miami*, 664 F.2d 435, 447 (5th Cir. 1981) (en banc) (Rubin, J., concurring), or a plaintiff's rights under anti-discrimination laws, *see City of Hialeah*, 140 F.3d at 976–77.  But Intervenors do not identify any such right.  In fact, during briefing on their original motion to intervene, Intervenors insisted they did not assert an "enforceable legal entitlement" protected by statute or contract because they did not need one— they had only an "interest[] in . . . the benefits they will realize from the Rule."  ECF No. 30 at 1–

---

[1] Intervenors make no argument that summary judgment is procedurally inappropriate, and so the Court need not address their objections to the proposed consent judgment if it chooses to enter summary judgment instead.

2 (cleaned up).  That may be sufficient to intervene and object to particular relief, but it is not sufficient to block an otherwise lawful consent judgment which has no effect on Intervenors' legal rights.[2]  Accordingly, when intervenors have only an interest in the maintenance of government action, courts routinely enter consent judgments over the objections of intervenors.  *See, e.g.*, *Turtle Island Restoration Network v. U.S. Dep't of Com.*, 672 F.3d 1160, 1163, 1169–70 (9th Cir. 2012) (affirming the approval of a consent decree "[o]ver [intervenors'] objection").  The Court should do likewise here.

Intervenors, in short, conflate their right to object to the proposed consent judgment with a right to unilaterally block a settlement between consenting parties.  As the cases Intervenors cite (at 1) explain, a party adversely affected by a proposed consent decree "is entitled to . . . have its objections heard . . . on whether to approve a consent decree."  *City of Cleveland*, 478 U.S. at 529; *see also City of Miami*, 664 F.2d at 447 (Rubin, J., concurring).  But Intervenors' objections here have been fully heard.  Where, as here, the objections are meritless, a court can enter a consent decree over those objections—including by vacating an agency rule.  For example, in *Home Builders Associations v. Norton*, "intervenor-defendants" did "not consent[] to the Proposed Consent Decree" and "filed . . . objections as well as presented oral argument to the Court to that effect."  293 F. Supp. 2d 1, 3 (D.D.C. 2002).  But Judge Leon noted that while "intervenor-defendants have withheld their consent, this does not prevent this Court from entering the Proposed Consent Decree" and vacating the Rule.  *Id.*  So too here.

---

[2] Intervenors similarly falter when they suggest (at 1–2) they are "entitled" to dismissal of Plaintiffs' claims based on their asserted "defenses."  Intervenors are not entitled to the dismissal of claims against third parties.  Indeed, every intervenor has an interest in one side losing—that is a precondition for intervention.  If that were an inextinguishable legal right, then almost no consent judgment between original parties would ever be permitted.

As for the substance of Intervenors' objections to the consent judgment, they reprise (at 2–3) their argument that vacatur here is "contrary to the [CFPB's] responsibilities" under the Administrative Procedure Act ("APA").  But again, as Judge Leon found, "the notice and comment requirements of 5 U.S.C. § 553 [do not] apply before the Court's adoption of a consent decree, as adoption of a consent decree is not an agency act under the APA."  *Home Builders Ass'ns*, 293 F. Supp. 2d at 5.  And the relief sought here—vacatur—is precisely the remedy to which Plaintiffs are entitled if they prevail on the merits.  *See* 5 U.S.C. § 706(2); *see also Data Mktg. P'ship, LP v. U.S. Dep't of Lab.*, 45 F.4th 846, 859 (5th Cir. 2022) ("The default rule is that vacatur is the appropriate remedy.").  The APA does not prohibit an agency from consenting to that remedy.

## II.      The Proper Remedy Is Vacatur of the Entire Medical Debt Rule.

If the Court reaches the merits, the proper remedy is vacatur of the entire Rule.  5 U.S.C. § 706(2)(A), (C).  Intervenors suggest (at 3) that even if the Medical Debt Rule unlawfully prohibits consumer reporting agencies ("CRAs") from furnishing—and creditors from considering—coded medical debt information, there are some sections and some applications of the Rule that are not unlawful, and the Court must sever and uphold those provisions.  And no matter what portions of the Rule are unlawful, Intervenors ask (at 6) for remand *without* vacatur. But Intervenors' attempts to limit the scope of the remedy in this case buck both statute and precedent.

For starters, the Court does not need to engage in any severability analysis when each of the Rule's substantive provisions is unlawful.  There is ample precedent—including from this Court—that when a rule's central provisions violate the governing statute, the appropriate remedy is to vacate the rule *in toto*.  *See, e.g.*, *Texas v. U.S. Dep't of Lab.*, 756 F. Supp. 3d 361, 398–99 (E.D. Tex. 2024).  And here, each of the substantive provisions of the Medical Debt Rule is

unlawful.  *First*, the Rule's changes to 12 C.F.R. § 1022.30 repeal the financial information exception and effectively prohibit creditors from considering coded medical debt information when making credit determinations.  Prohibition on Creditors and Consumer Reporting Agencies Concerning Medical Information (Regulation V), 90 Fed. Reg. 3276, 3372–73 (Jan. 14, 2025). That violates 15 U.S.C. § 1681b(g)(2).  *Second*, § 1022.38(b)(1) incorporates the Rule's changes to § 1022.30 and therefore effectively prohibits CRAs from reporting coded medical debt to creditors.  90 Fed. Reg. at 3373–74.  That violates 15 U.S.C. § 1681b(g)(1)(C).  *Third*, § 1022.38(b)(2) prohibits CRAs from reporting coded medical debt information if creditors are prohibited from using it under state or other law.  But FCRA does not authorize the Bureau to promulgate regulations limiting the content of consumer reports based on state law; Intervenors' attempted reliance on the "permissible purpose" provisions in 15 U.S.C. § 1681b(a) is baseless and premised on a fundamentally flawed understanding of that provision.  *See* ECF No. 31 at ¶ 8.[3] That together justifies vacatur.

Even if the Court engaged in a more detailed severability analysis, the entire Rule would fall.  A court will only save portions of an unlawful rule where there is evidence the agency intended those portions to remain operative and "the remainder of the regulation could function sensibly without the stricken provisions."  *Texas v. United States*, 126 F.4th 392, 419 (5th Cir. 2025) (cleaned up).  Where the agency has codified its intentions in a severability clause, that clause informs the first portion of the analysis.  *See id*.  The severability clause here gives specific instructions: "if . . . *any* provisions" of section § 1022.30 (governing creditors) are "determined to be invalid," then § 1022.38(b)(1) (governing CRAs) "would not take … effect, because it relies on the amendments to § 1022.30."  90 Fed. Reg. at 3351 (emphasis added).  Because the amendments

---

[3] Intervenors ignore (at 4) Plaintiffs' and Defendants' separate statutory authority arguments.

to § 1022.30 unlawfully prohibit creditors from considering coded medical debt information, both it and § 1022.38(b)(1) must be vacated.  And § 1022.38(b)(2) is separately unlawful for the reasons stated above.

Intervenors claim (at 4) that even if those sections are vacated, the remaining subsections of the Rule are valid.  But Intervenors cannot credibly contend that the agency intended the Rule's vestigial clauses to operate in the absence of the Rule's body.  The only section of the Rule that Plaintiffs have not directly challenged is § 1022.3(j), which defines the term "medical debt information."  90 Fed. Reg. at 3372.  That term is used only in the Rule's new § 1022.38, so § 1022.3(j) would have no independent effect absent § 1022.38, which is unlawful.  Intervenors also do not (and cannot) adequately explain how the Medical Debt Rule's version of § 1022.30 could be preserved in part.  True, the Rule both revoked § 1022.30's financial information exception and added language to that section.  For instance, Intervenors mention (at 4) that "§ 1022.30(e)(1)(x)" and "§ 1022.30(e)(6) and (7)" now specify particular lawful uses of medical information.  But these permissions were encompassed by the former financial information exception codified at § 1022.30(d), and they were only relocated to subsection (e) because the Medical Debt Rule eliminated (d).  Even if this Court could somehow vacate only the portion of the Rule that deletes § 1022.30(d), the other additions to § 1022.30 would be entirely duplicative.  This is hardly the sensible functioning that a severability analysis requires.

Intervenors also suggest (at 5) there are certain *applications* of the Rule that would be lawful, such as the prohibition on creditors' use of non-coded medical debt information.  But even if that were true,[4] Intervenors concede (at 5) that these applications "do[] not appear to be

---

[4] Intervenors labor under a misapprehension that § 1681b(g)(2) permits creditors to consider only the *contact* information of medical furnishers contained in consumer reports, which § 1681c(a)(6)

severable" from the challenged applications, and so they urge the Court to remand without vacatur.

But there is no basis for that extraordinary remedy here. "Vacatur is the only statutorily prescribed remedy for a successful APA challenge to a regulation." *Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 374–75 (5th Cir. 2022). "[R]emand *without* vacatur" is a narrow and judicially created exception for "rare cases," *Rest. L. Ctr. v. U.S. Dep't of Lab.*, 120 F.4th. 163, 177 (5th Cir. 2024) (quotation omitted), where "there is at least a serious possibility that [a rule's] deficiency can be corrected on remand and . . . vacatur would have disruptive consequences," *Tex. Med. Ass'n v. U.S. Dep't of Health and Hum. Servs.*, 110 F.4th 762, 779 (5th Cir. 2024) (cleaned up). Neither condition is satisfied here. Conforming the Rule to FCRA is not a matter of a simple correction on remand—the Bureau would need to abandon the Rule's prior goal of "generally" prohibiting CRAs and creditors from using medical debt information and engage in new substantive rulemaking. *See* 90 Fed. Reg. at 3276; *see also Texas*, 126 F.4th at 419 (holding that remand without vacatur was inappropriate where "the Final Rule 'contradicts significant portions of the'" governing statute). The Bureau is of course free to explore alternate policies that stay within statutory parameters (*see* Intervenors' Br. 6), but there is no reason to leave an unlawful rule in place in the meantime. And vacatur here would not risk serious disruption because the to-be-vacated Rule has not even gone into effect.

Intervenors' remaining objections are unpersuasive. They suggest (at 6–7) that vacatur would reinstate an "unlawful" rule. But the so-called unlawful rule is the 2005 regulation that has been in place for two decades (and is operative now). Vacating the Medical Debt Rule would

---

requires CRAs to code. That reads (g)(2)'s terms too narrowly. Section 1681b(g)(2) does not merely authorize creditors to use coded "contact information" from consumer reports—it allows creditors to use any "*medical information* treated in the *manner* required under section 1681c(a)(6)," that is, information from consumer reports or other sources that is coded to obscure private medical details. *See* 15 U.S.C. § 1681b(g)(2) (emphasis added).

simply cause the 2005 regulation to continue in operation.  To the extent that Intervenors wanted to challenge the status quo as unlawful, they would have needed to bring an APA claim challenging the 2005 rule. The only question in *this* case is whether the 2025 Medical Debt Rule is contrary to law.

Intervenors also argue for the first time (at 7) that any relief should be limited to the Plaintiffs in this case.  But the Fifth Circuit recently rejected precisely such an argument.  *See Tex. Med. Ass'n*, 110 F.4th at 779–80.  "[V]acatur under" the APA is "a remedy that affects individuals beyond those who are parties to the immediate dispute . . . . § 706 . . . empowers courts to set aside—*i.e.*, formally nullify and revoke—an unlawful agency action."  *Braidwood Mgmt., Inc. v. Becerra*, 104 F.4th 930, 951 (2024) (cleaned up).  Thus, Intervenors' cases (at 7) involving the tailoring principle for other equitable relief are inapposite; this is a pure APA case, and the default remedy in this Circuit for an agency action held unlawful under the APA is vacatur.  *Id.* at 952.[5]

## III.    The Medical Debt Rule Violates the Plain Text of FCRA.

Finally, nothing in Intervenors' discussion of statutory history changes the fact that the Medical Debt Rule violates the plain terms of the statute.  Intervenors contend (at 7–8) the FACT Act of 2003 expanded consumer protections, as the definition of "medical information" prior to 2003 was narrower, covering information obtained with consumer consent "from . . . medical or medically related facilities."  15 U.S.C. § 1681a(i) (2000).  Intervenors are correct that the FACT Act expanded that definition, but that is only half the story.  At the same time, the Act's changes to § 1681b(g)(1) and (2) struck a careful balance that generally limits CRAs from reporting—or

---

[5] It would also be "impractical, if not impossible, to fashion party-tailored relief here."  *Dep't of Lab.*, 756 F. Supp. 3d at 399.  As Plaintiffs previously explained, "the Final Rule restricts the nationwide activities of CDIA's member CRAs," Cornerstone's credit unions, and "thousands of other creditors to whom the nationwide CRAs furnish their reports."  ECF No. 9 at 20.  "It does the CRAs no good to report coded medical debt if none of their customers can use it."  *Id.*

creditors from using—medical information, *unless* that information is coded to protect consumers'

health information.  Intervenors concede (at 8) the point Plaintiffs have made all along: before the

FACT Act there was a "blanket prohibition" on the use of medical information, and the currently

operative statutory text takes a more nuanced approach.  Because the Medical Debt Rule

contravenes the plain text of the current law, it is unlawful and must be set aside.

## CONCLUSION

The Court should either enter the proposed consent judgment or—after reaching the

merits—grant summary judgment to Plaintiffs, permanently vacating the Medical Debt Rule.

Dated:  June 20, 2025                                                  Respectfully Submitted,

By: /s/  *Alex More*
Alex More
TX Bar No. 24065789
Andrea C. Reed
TX Bar No. 24121791
CARRINGTON, COLEMAN, SLOMAN &
BLUMENTHAL, L.L.P.
901 Main Street
Suite 5500
Dallas, TX 75202
Tel: (214) 855-3053
amore@ccsb.com

Ryan T. Scarborough (admitted *pro hac vice*)
DC Bar No. 466956
Jesse T. Smallwood (admitted *pro hac vice*)
DC Bar No. 495961
William R. Murray, Jr. (admitted *pro hac vice*)
DC Bar No. 384797
Christopher J. Baldacci (admitted *pro hac vice*)
DC Bar No. 90007281
WILLIAMS & CONNOLLY LLP
680 Maine Ave., SW
Washington, DC 20024
Tel: (202) 434-5000

rscarborough@wc.com
jsmallwood@wc.com
bmurray@wc.com
cbaldacci@wc.com

Eric Blankenstein (admitted *pro hac vice*)
DC Bar No. 997865
LAW OFFICES OF ERIC BLANKENSTEIN PLLC
1701 Pennsylvania Ave., NW, #200
Washington, DC 20006
eric@blankensteinlegal.com

***Counsel for Plaintiffs Cornerstone Credit Union League and Consumer Data Industry Association***

Mark Paoletta
*Chief Legal Officer*

Daniel Shapiro
*Deputy Chief Legal Officer*

Victoria Dorfman
*Senior Legal Advisor*

Christopher Deal
*Assistant General Counsel for Litigation*

/s/ *Andrea J. Matthews*
Andrea J. Matthews (admitted *pro hac vice*)
MA Bar No. 694538
Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552
andrea.matthews@cfpb.gov
(202) 407-2324

***Counsel for Defendants Consumer Financial Protection Bureau and Russell Vought***

9

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Joint Supplemental Response in Support of Consent Judgment or Summary Judgment was filed electronically through the Court's ECF system. *See* Fed. R. Civ. P. 5(b)(2)(E).

*/s/  Alex More*